[L. A. No. 8905. In Bank.—September 27, 1926.]

In the Matter of the Estate of JOHN S. SANKEY, Deceased.

[1] PUBLIC RECORDS—FILING—DEPOSIT WITH OFFICER — INDORSEMENT. When an instrument is deposited with the proper officer, at the proper place, for the purpose of filing, in contemplation of law it is deemed to have been filed; and the actual indorsement of the instrument is not a necessary part of the filing, but is mere evidence of that fact.

[2] PUBLIC OFFICERS — PERFORMANCE OF DUTY — PRESUMPTIONS. — An officer is presumed to have performed his duty, and one may not

1. See 22 Cal. Jur. 607, 611; 23 R. C. L. 186.
2. See 21 Cal. Jur. 898; 22 R. C. L. 472.

be prejudiced by the mere failure of an officer to perform his ministerial duty.

[3] ESTATES OF DECEASED PERSONS — PROBATE OF WILL — NOTICE — TIME.—Under a statute requiring the publication of a notice once each week during the time for which notices are directed to be given, the publication in a weekly newspaper of a ten days' notice of the time for probating a will of a deceased person on December 16th and 23d immediately prior to the time of hearing fixed by order of court for January 3d, complies with the statute.

[4] ID.—PUBLICATION—TIME.—Where publication of a notice is made once each week, instead of daily, it is not necessary that the full time prescribed by an order therefor shall intervene between the first and last publication, but only that the notice shall be published once each week during the time prescribed, but the full period prescribed must elapse after the first publication before the service is complete.

[5] ID.—ORDER FOR PROBATE OF WILL—MISTAKE.—Where an order admitting a will to probate recited that the hearing of an application for the probate of a certain instrument in writing came on for hearing on a certain day, "and it appearing to the court that due and legal notice of the *filing* thereof had been given in the manner and for the time required by law," etc., the word "filing" was inadvertently used for "probating," as no notice of the "filing" of a will is required by law, and the finding that due and legal notice was given could refer to nothing but the notice of time and place of probating the will as required by law.

[6] ID.—ANCILLARY PROBATE—RECORD OF ORIGINAL PROBATE.—On proceedings for ancillary probate of a foreign will, the statute of this state provides only for the presenting of a duly certified copy of the will and the decree admitting the will to probate, and an affidavit showing the insufficiency of a notice in the original probate proceedings is mere surplusage.

[7] ID.—JUDGMENTS—COLLATERAL ATTACK.—When a court has general jurisdiction of the subject matter which involves the particular class of cases in which the specific relief is sought, and formally enters its decree finding that the necessary procedure was followed, or the necessary facts existed, upon which its jurisdiction over the particular matter would attach, since the right to determine these preliminary matters upon evidence adduced includes the right to make an erroneous decision, its decree will be binding and final against any collateral attack.

---

4. See 21 Cal. Jur. 517.
7. See 15 Cal. Jur. 75, 81; 15 R. C. L. 861.

[8] ID.—RESIDENCE OF DECEDENT—FINDINGS—COLLATERAL ATTACK.—In a proceeding for the probate of a will in the court of a foreign state, since the jurisdiction of that court, authorizing it to originally admit the will of the decedent to probate, requires it to first find that the decedent was a resident of that state, its decree admitting the will to probate necessarily implies that the question of residence was first determined, and the decree is binding and final against any collateral attack; and if a lack of jurisdiction does not appear on the face of the record, on collateral attack the jurisdiction will be presumed, even though the necessary facts conferring it do not affirmatively appear in the decree; under such circumstances, it will be assumed the parties were properly before the court, and that the proceedings were regular.

[9] ID.—RESIDENCE IN STATE—ANCILLARY PROBATE—SECTION 1322 OF THE CODE OF CIVIL PROCEDURE.—Section 1322 of the Code of Civil Procedure, since the amendment of 1911, authorizes the granting of ancillary probate even though the testator be, in fact, a resident of the county where the proceedings are instituted at the time of his death.

[10] ID.—FOREIGN WILL—ANCILLARY PROBATE—EFFECT OF FINAL DECREE.—Upon ancillary proceedings in this state for the probate of a foreign will, where the court finds that decedent died in the foreign state and was then a resident thereof, that his will was duly admitted to probate there by a decree of a court of competent jurisdiction, having jurisdiction of the matter and of the persons interested, and that the will was executed according to the laws of that state, a final decree ordering ancillary letters issued is binding as against a collateral attack.

[11] ID.—POSTHUMOUS CHILD—EFFECT OF DECREE UPON.—In such a case, the decree admitting the will to probate both in the domiciliary and ancillary proceedings is binding upon a posthumous child of the deceased, which is deemed to be living at the time of the death of the parent, and to be represented by individuals possessing an interest in the estate.

[12] ID.—PROBATE OF WILL — CONTEST — REVOCATION — GROUNDS. — A proceeding for the contest or revocation of probate of a will is purely statutory, *in rem*, and binds the world as to the *res* involved and can be maintained only upon the grounds authorized by statute; and the statute does not authorize the contest of a will or revocation of the probate thereof, because of lack of original jurisdiction.

8.  See 15 Cal. Jur. 68.
12. See 26 Cal. Jur. 1077.

[13] ID. — PRETERMITTED HEIR — INTEREST IN ESTATE — HOSTILITY TO
    WILL—SECTION 1306 OF THE CIVIL CODE.—Under the provisions
    of section 1306 of the Civil Code, a pretermitted heir, immediately
    upon his or her birth, succeeds to an undivided interest in the
    parent's estate as completely as though there had been no will,
    and such heir is not entitled to be heard in an action to con-
    test or construe the will, nor to revoke the probate thereof.

---

(1) 40 Cyc., p. 1265, n. 82.   (2) 22 C. J., p. 130, n. 30, p. 141,
n. 71 New; 40 Cyc., p. 1265, n. 82.   (3) 40 Cyc., p. 1264, n. 81,
p. 1374, n. 4.   (4) 29 Cyc., p. 1122, n. 85.   (5) 40 Cyc., p. 1344,
n. 46.   (6) 40 Cyc., p. 1374, n. 4.   (7) 34 C. J., p. 555, n. 75.
(8) 34 C. J., p. 540, n. 77.   (9) 40 Cyc., p. 1239, n. 90.   (10) 40
Cyc., p. 1374, n. 4.   (11) 40 Cyc., p. 1374, n. 3 New, 4.   (12) 40
Cyc., p. 1240, n. 99, 2, 8 New.   (13) 40 Cyc., p. 1241, n. 22.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Carlos S. Hardy, Judge. Reversed.

The facts are stated in the opinion of the court.

Duke Stone, McLean, Scott & Sayers, Capps, Cantey,
Hanger & Scott and W. P. Z. German for Appellant.

Hill, Morgan & Bledsoe and Kenneth K. Wright for
Respondent.

THOMPSON, J., *pro tem.*—This is an appeal from a
decree setting aside a former order of the superior court of
Los Angeles County, admitting to probate the will of John
S. Sankey, deceased, upon ancillary proceedings pursuant
to section 1322 of the Code of Civil Procedure et seq., after
its admission to probate in the state of Texas. The ancillary
proceedings were vacated on petition of Jacquelin S. Sankey,
a posthumous child, and pretermitted heir of the deceased.

A reversal of the judgment is sought chiefly upon the
ground that a pretermitted heir, who takes her share of the
estate independently of, and in hostility to the will, as pro-
vided by section 1306 of the Civil Code, has no interest in
the will or the probate proceedings which will authorize her
to maintain the contest; and that the proceedings which re-
sulted in the revocation of the ancillary probate of the will
at Los Angeles constituted a collateral attack upon the

---

13. See 26 Cal. Jur. 918.

decree of the Texas court and of the former decree of the
Los Angeles court.

John S. Sankey died testate at Fort Worth, Texas, Novem-
ber 30, 1921, leaving surviving him a wife and one minor
child, named Eleanor Ruth Sankey. The deceased was pos-
sessed of an estate of the value of approximately $500,000,
which was entirely disposed of by will. A legacy of $25,000
each was bequeathed to his wife, his mother, his brother and
his sister. The balance of the estate was left in trust for the
benefit of his daughter Eleanor until she arrived at the age
of thirty-five years, at which time it was to become hers
absolutely. The posthumous child, Jacquelin, was not men-
tioned in the will. F. P. Lieuallen was named as trustee.
Upon proceedings had in the county court of Tarrant County,
Texas, the will was admitted to probate on January 3, 1922,
and Lieuallen was appointed and qualified as executor
thereof. Upon petition of Lieuallen, supported by authenti-
cated proceedings of the original probate, this will was duly
admitted, March 1, 1922, in the superior court of Los An-
geles County, as a foreign will, and ancillary letters were
issued to said petitioner. On July 2, 1922, Jacquelin S.
Sankey, the posthumous child and pretermitted heir of said
deceased, was born. Subsequently her mother remarried and
became known as Mrs. Fay Williams. October 2, 1924, she
was appointed and qualified as guardian of this child, in
which capacity she filed her petition to revoke the ancillary
proceedings of the Los Angeles court. This petition to
revoke the ancillary proceedings alleged that Jacquelin S.
Sankey was the posthumous child and pretermitted heir of
the deceased; that the deceased was a resident of Los An-
geles County at the time of his death, and that the superior
court of that county therefore had no authority to admit
the will on ancillary proceedings as a foreign will; that the
notice of probate in Tarrant County, Texas, was defective,
and the affidavit of publication, which was among the pro-
bate papers, was not indorsed as filed, and that the Texas
court was without jurisdiction to render its decree originally
admitting the will in that state; that the defect of publica-
tion of notice appeared upon the face of the authenticated
proceedings presented to the Los Angeles court, and that the
original decree of the Texas court and the subsequent decree
of the Los Angeles court granting ancillary probate, were

void. No fraud or misrepresentations in procuring these decrees admitting the will to probate was alleged.

The executor and the daughter Eleanor appeared in opposition to this petition to revoke the ancillary proceedings and demurred on the specific grounds that the pretermitted heir was without authority to maintain the action to revoke or contest the proceedings since she had no interest in the will, but took her share of the estate in hostility to the will; and that her petition to revoke the probate constituted a collateral attack upon the original decree admitting the will to probate in Texas, and the subsequent decree of the Los Angeles court granting ancillary letters. The demurrers were overruled. At the beginning of the trial objections to the introduction of any evidence were made on the same grounds, which were also overruled. Evidence was thereupon received tending to impeach the jurisdiction of the Texas court, by showing the insufficiency of the publication of notice to probate, and also tending to show that the residence and domicile of the deceased, at the time of his death, was Los Angeles County, and not Texas. Upon this evidence the court made its findings sustaining the claims of petitioner and revoking the ancillary probate proceedings in Los Angeles County.

On the petition to revoke the ancillary proceedings the jurisdiction of the Texas court was challenged on the grounds that the testator was not a resident of the state of Texas at the time of his death; that notice of the time of proving the will was not published according to law, and that the return of service of the citation, which was among the probate proceedings, did not purport to have been filed as required by law.

[1] The actual indorsement of the instrument is not a necessary part of the filing, but is mere evidence of that fact. [2] An officer is presumed to have performed his duty, and one may not be prejudiced by the mere failure of an officer to perform his ministerial duty. When the instrument is deposited with the proper officer, at the proper place for the purpose of filing, in contemplation of law, it is deemed to have been filed. (*Edwards* v. *Grand*, 121 Cal. 255 [53 Pac. 796]; *Smith* v. *Biscailuz*, 83 Cal. 344 [21 Pac. 15, 23 Pac. 314]; *Estate of Carroll*, 190 Cal. 105, 111 [210 Pac. 817]; 3 W. & Ph. 2768.)

[3] In response to an order of the Texas court setting Monday, January 3, 1922, as the time for probating the will, and directing ten days' notice thereof, by publication as required by law, the notice was actually published in a weekly newspaper on December 16th and 23d, immediately prior to the time of hearing. Article 3230 of the Civil Statutes of Texas formerly required notices for the probating of a will to be given by posting in three public places. By an amendment found in chapter 179, article 6016½ of the Texas Civil Statutes, it is provided: "Whenever by law, notices are required to be given by any act or proceeding . . . which notice is now authorized by law or by contract, to be made by posting . . . such notices shall hereafter be given by publication thereof. . . . All notices published under the provisions of this act shall be printed at least once each week for the period of time now required for posting such notices." This statute evidently intended to require the publication once each week during the time for which notices were directed to be given, in lieu of the posting thereof which was formerly required. It is apparent that but two weekly notices could be published during the period of ten days. This notice was actually published once each week for two successive times during the ten days prescribed, prior to the day of hearing. The first publication occurred December 16th, and the ten days prescribed expired on December 26th. The following Monday the matter was set for hearing. During that period the notice was published as often as it could have been done, once each week, to comply with the statute. In 21 Cal. Jur., at 517, it is said: [4] "Where the publication is made once each week instead of daily, it is not necessary that the full time prescribed by the order shall intervene between the first and last publications, but only that the summons shall be published once each week during the time prescribed. Of course the full period prescribed must elapse after the first publication before the service is complete."

[5] The Texas court in its decree admitting the will to probate found: "On this day came on to be heard by the court the application of F. P. Lieuallen for the probate of a certain instrument in writing dated June 11, 1921; and it appearing to the court that due and legal notice of the *filing* thereof has been given in the manner and for the time

required by law, and the evidence, a copy of which is on file in this court having been heard and fully considered; It is ordered, adjudged and decreed by the court that said instrument in writing be and the same is hereby admitted to probate. . . . '' Where the court, in its decree uses the language, ''due and legal notice of the *filing*,'' etc., it is apparent that the word ''filing'' was inadvertently employed by the court instead of the word probating. This was a mere clerical error. No notice of the ''filing'' of a will is required by law. The finding that due and legal notice was given can refer to nothing but the notice of time and place of probating the will as required by law.

[6] Even though the notice were deemed to be insufficient, that fact can only be ascertained by reference to the affidavit on file. This affidavit was not a necessary part of the authenticated record required upon ancillary proceedings to probate a foreign will. Our statute provides only for the presenting of duly certified copies of the will, and the decree admitting the will to probate. (Code Civ. Proc., 1323.) This affidavit may be considered surplusage. It was *ex industria* included as a part of the authenticated proceedings. In view of the findings of the court, on collateral attack, it will be presumed that other evidence was adduced in support of the decree.

In *Goldtree* v. *McAllister*, 86 Cal. 93, 102 [23 Pac. 207, 209, 24 Pac. 801], respecting the sufficiency of the evidence upon which authenticated copies of a record for ancillary probate were admitted, the court said: ''In either case, the error, if it was error (and this may be conceded for the present purpose), was such only as to the competency or sufficiency of the evidence upon which the court found the fact which is claimed to be jurisdictional, . . . I therefore think the trial court did not err.''

[7] When a court has general jurisdiction of the subject matter which involves the particular class of cases in which the specific relief is sought, and formally enters its decree finding that the necessary procedure was followed, or the necessary facts exist upon which its jurisdiction over the particular matter would attach, since the right to determine these preliminary matters upon evidence adduced includes the right to make an erroneous decision, nevertheless, its decree will be binding and final against any collateral attack.

(1 Freeman on Judgments, 5th ed., pp. 719–723, secs. 350 and 351.)

[8] Since the jurisdiction of the Texas court, authorizing it to originally admit the will of John S. Sankey to probate, required that court to first find that the deceased was a resident of that state, its decree admitting the will necessarily implies that the question of residence was first determined, and the decree became binding and final against any collateral attack. If a lack of jurisdiction does not appear on the face of the record, on collateral attack, the jurisdiction will be presumed, even though the necessary facts conferring it do not affirmatively appear in the decree. Under such circumstances it will be assumed the parties were properly before the court, and that the proceedings were regular. (15 Cal. Jur. 68.) In 1 Freeman on Judgments, 5th ed., p. 723, it is said: "If the residence of the deceased within the territorial jurisdiction of the court at the time of his death is essential to give the court power to admit the will to probate, or to grant letters of administration of his estate, its adjudication of such fact cannot . . . be drawn in question collaterally." In the *Estate of Dole,* 147 Cal. 188 [81 Pac. 534], the court said: "The determination of the probate court as to the residence of the deceased at the time of his death is final in all collateral proceedings. (*Irwin* v. *Scriber,* 18 Cal. 500; *In re Griffith,* 84 Cal. 107 [23 Pac. 528, 24 Pac. 381]; *In re Eichoff,* 101 Cal. 605 [36 Pac. 11]; *Estate of Latour,* 140 Cal. 421 [73 Pac. 1070, 74 Pac. 441].) As this proceeding was instituted for the purpose of revoking a will which had become final except subject to attack in the manner provided by statute, and as the statute does not provide that want of jurisdiction is one of the grounds upon which such probate may be revoked, it is clear that the question now attempted to be raised is collateral."

[9] The respondent, however, contends that the Los Angeles court had no jurisdiction, under any circumstances, to grant ancillary probate of a will executed by one who, at the time of his death, was a resident of this state, and that such an instrument could only be admitted in this state as an original domestic will. In support of this claim *Estate of Clark,* 148 Cal. 108 [113 Am. St. Rep. 197, 7 Ann. Cas. 306, 1 L. R. A. (N. S.) 996, 82 Pac. 760], is cited. The

testator, Clark, was a resident of Yolo County, California, at the time of his death. While visiting in New Hampshire he executed his will, which, after his death, upon proceedings duly had, was admitted to probate in that state. Subsequently, upon ancillary proceedings in the superior court of Yolo County, the court received evidence of the residence of the testator, and refused to grant ancillary letters on the ground that the will was not entitled to probate as a foreign will. The court said: "If upon the question of residence it shall be determined that the deceased was in truth a resident of this state, it follows of necessity that the proper state court has exclusive original primary jurisdiction to admit the will to probate, and will not admit it as a foreign will for ancillary proceedings." To this opinion Justices Van Dyke, McFarland and Shaw dissented. This decision was rendered October 12, 1905. Section 1322, Code of Civil Procedure, then provided that any will duly proved and admitted in another state may be allowed and admitted to probate as a foreign will in any county of this state "in which the testator shall have left any estate." Since the decision in the Clark case the legislature has enlarged the jurisdiction of our superior courts in ancillary probate proceedings. In 1911 the section was amended to provide that such foreign wills may be allowed and recorded in the superior court of any county "in which the testator shall have left any estate, *or shall have been a resident* at the time of his death." Apparently this amendment was intended to overcome the effect of the Clark decision, and now clearly authorizes the granting of ancillary probate even though the testator be, in fact, a resident of the county where the proceedings are instituted, at the time of his death.

Assuming that the testator in the instant case was in fact a resident of Los Angeles County at the time of his death, upon original proceedings duly had in that county, setting forth the necessary jurisdictional facts, his will might have been admitted there as a domestic will. But upon the ancillary proceedings which alleged the residence to have been in Texas, the court had no jurisdiction to admit it as a domestic will. On the contrary, as section 1322, Code of Civil Procedure, now stands, and upon proper ancillary proceedings, the court had jurisdiction to admit it as a foreign will. Any other construction of this section would

eliminate and render void the effect of the language of the amendment referred to.

[10] Upon those ancillary proceedings the Los Angeles court did accept jurisdiction, and upon the evidence adduced found: "That John S. Sankey died on or about the 30th day of November, 1921, in the county of Tarrant, State of Texas, and at the time of his death he was a resident of the county of Tarrant, State of Texas; that the will, a copy of which is annexed hereto, was duly proved, allowed and admitted to probate as the last will and testament of the said John S. Sankey, deceased, in the county court of the county of Tarrant, State of Texas, by an order of said court duly made and entered therein on the 3d day of January, 1922; that said court at the time of making said order was a court of competent jurisdiction, and had jurisdiction of said matter, and of all the persons interested in the estate of said deceased; that said will was executed according to the laws of the state of Texas, in which state the testator was domiciled at the time of his death." Upon these findings ancillary letters were issued. No appeal was taken, and no proceedings instituted under section 473, Code of Civil Procedure, to vacate or modify the decree. That decree therefore became binding as against collateral attack.

[11] The respondent, however, asserts that the petitioner was neither bound by the decree of the Texas court nor the original decree of the Los Angeles court, because she was unborn at the time these decrees were made, and she therefore had no notice of the proceedings. But a posthumous child is deemed to have been represented by its mother or other individuals possessing an interest in the estate, so as to bind it to all orders and decrees duly made in the ordinary course of administration. "Posthumous children are considered as living at the time of the death of their parents." (Civ. Code, 1403.) "Parties in being, possessing an estate of inheritance, are regarded as so far representing all parties who, being afterward born, may have interests in the same, that a decree binding them will also bind the afterborn parties." (1 Woerner on Administration, 165, sec. 155.)

In *County of Los Angeles* v. *Winans*, 13 Cal. App. 234, 245 [109 Pac. 640], it is said: "Where an estate is vested in persons living, subject only to the contingency that per-

sons may be born who will have an interest therein, the living owner of the estate for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand, not only for themselves, but for the persons unborn. This is a rule of convenience, and almost of necessity. The rights of persons unborn are sufficiently cared for if, when the estate shall have been sold under a regular and valid judgment, its proceeds takes its place and are secured in some way for such persons.'' (*Faulkner* v. *Davis,* 18 Gratt. (Va.) 651 [98 Am. Dec. 698]; *Knotts* v. *Stearns,* 91 U. S. 638 [23 L. Ed. 252, see, also, Rose's U. S. Notes].) In California it is specifically provided by statute that such after-born child succeeds to its interest by operation of law, and its birth does not impair the effect or validity of any sale of property duly made in which the posthumous child may have an interest. (Civ. Code, 1306.)

So far as the jurisdiction of the probate courts of Texas and of California are concerned, in the granting of probate in this matter, it must be assumed that Jacquelin S. Sankey, the posthumous child, was represented by the living heirs and devisees of the deceased, who actually had the same interest that she possessed, in the court and place where the estate was to be administered. We think that the doctrine of virtual representation applies to the instant case.

[12] It further appears that the order of the Los Angeles court revoking the ancillary probate proceedings was unwarranted because the lack of original jurisdiction is not a ground provided by statute upon which a will may be contested, or the probate thereof revoked, and because the pretermitted heir possessed no such interest in the will or the probate proceedings as would authorize her to maintain the contest.

Section 1306 of the Civil Code provides that: ''Whenever a testator has a child born after the making of his will, either in his lifetime, or after his death, and dies leaving such child unprovided for by any settlement, and neither provided for nor in any way mentioned in the will, the child succeeds to the same portion of the testator's real and personal property that he would have succeeded to if the testator had died intestate.''

The respondent asserts the right of a pretermitted heir to contest the ancillary probate of a will, or prosecute a petition to revoke that probate upon any of the grounds upon which the original probate of the will may be contested. A will may be contested, or the probate thereof revoked, only upon the grounds authorized by statute. The proceeding is purely statutory, *in rem*, and binds the world as to the *res* involved. (*Estate of Baker*, 170 Cal. 578, 585 [150 Pac. 989]; *Estate of Allen*, 176 Cal. 632 [169 Pac. 364]; *Estate of Relph*, 192 Cal. 451, 458 [221 Pac. 361].) The grounds for contest are specified in section 1312, Code of Civil Procedure, as follows: "1. The competency of the decedent at the time of the execution of the will and testament; 2. The freedom of the decedent at the time of the execution of the will from duress, menace, fraud, or undue influence; 3. The due execution and attestation of the will by the decedent or the subscribing witnesses; 4. Any other questions substantially affecting the validity of the will."

[13] Under the provisions of section 1306 of the Civil Code the pretermitted heir, immediately upon her birth, succeeded to an undivided one-third of her father's estate as completely as though there had been no will which purported to dispose of the entire estate. She inherited this share in spite of the will, and in hostility to it. On principle it naturally follows that one who claims an interest adversely to the will is not entitled to be heard in an action to contest or construe the same. (40 Cyc. 1847–1849.) To the same effect the author of Alexander on Wills says: "An omitted child cannot appear and contest the probating of the will on the grounds of the omission, as his rights are independent of the will, and are unaffected by it. Neither has he the right to have it set aside." (2 Alexander on Wills, 962; *McIntire* v. *McIntire*, 64 N. H. 609 [15 Atl. 218]; *Bunce* v. *Bunce*, 14 N. Y. Supp. 659.)

In 28 R. C. L. 386 it is said: "In order that a person may contest a will it is necessary that such person shall have some interest which may be affected by the probate of the proposed will. Furthermore, such interest must be pecuniary and one detrimentally affected by the will." In the case of *State* v. *Superior Court of Sacramento County*, 148 Cal. 56 [2 L. R. A. (N. S.) 643, 82 Pac. 673], by means of a petition for writ of mandate the state sought to compel the

court to permit it to appear and contest the will of a deceased person who died without known heirs or kin within the state, and alleged that "it had an immediate present interest in the estate." The petition was denied, and the court said: "It is a necessary condition to the right of any party (in the contest of a will) that such party shall have some interest in the estate which may be affected by the probate of the proposed will."

In the *Estate of Smith*, 145 Cal. 118 [78 Pac. 369], where a pretermitted heir was born after the execution of the will, on distribution, an annuity of $125 per month which was to be paid during the life of the mother of testatrix, was reduced one-third pursuant to section 1308 of the Civil Code, which provides that all devises and legacies must contribute to the share of a pretermitted heir, in the proportion which they bear to the entire value of the estate. In the opinion this court said: " . . . Subject to administration, the post-testamentary child succeeded immediately, by operation of law, to an undivided one-third of the property of the testatrix. As to such portion, the deceased is regarded as having died intestate (*Smith* v. *Olmstead*, 88 Cal. 582 [22 Am. St. Rep. 336, 12 L. R. A. 46, 26 Pac. 521]), and, so far as the child is concerned, the will is to be considered as not existing." And in the *Estate of Loyd*, 175 Cal. 699 [167 Pac. 157], it was held that a pretermitted heir possessed no such interest in a will which had been duly admitted to probate in the state of California, as would authorize him to compel the sale of lands belonging to the estate which were situated in the state of Iowa. In its opinion this court said: " . . . Our cases all hold, as necessarily they must, that such an heir does not and cannot take under the will, but takes, wherever by will the testator has disposed of all his property, in opposition and in hostility to that will. (*Pearson* v. *Pearson*, 46 Cal. 609; *Estate of Wardell*, 57 Cal. 484; *In re Grider*, 81 Cal. 571 [22 Pac. 908]; *Estate of Smith*, 145 Cal. 118 [78 Pac. 369]; *Smith* v. *Olmstead*, 88 Cal. 582 [22 Am. St. Rep. 336, 12 L. R. A. 46, 26 Pac. 521]; *Painter* v. *Painter*, 113 Cal. 371 [45 Pac. 689].) In *Smith* v. *Olmstead, supra*, it is said: 'We are unable to consider these sections otherwise than as declaring that the pretermitted child succeeds immediately by operation of law to the same portion of the testator's real property as if no will had been

made; that as to such portion the testator is to be regarded as dying intestate, and its succession is directed by law and not by the will.' In the later case of the *Estate of Smith, supra,* the same unescapable doctrine is declared, and it is said: 'And so far as such child is concerned the will is to be considered as not existing.' . . . What the law gives him as a pretermitted heir, he takes outside of and in hostility to the will, and it is not open to him to invoke nor to ask the aid of the court in probate to enforce any of the provisions of the will for his benefit.

"But it is next said that the respondent has the right to invoke the provisions of the will because he was a party interested in the subject matter, and in this, reliance is placed upon *Atlee* v. *Bullard,* 123 Iowa, 274 [98 N. W. 889]. A reading of the case demonstrates how fallacious respondent's effort is to detach a single phrase from its context, for only those are interested in the subject matter who are the beneficiaries of the particular' devise under the will."

For the purposes of administration, the probate court takes jurisdiction not only of that portion of the estate which is affected by the provisions of the will, but also that portion which passes to the pretermitted heir by operation of law. (*Estate of Grider,* 81 Cal. 571 [22 Pac. 908].) Therefore, to the extent of this share of the estate which the pretermitted heir takes, it must be admitted he has an interest in the administration of the entire estate, as distinguished from an interest in the will itself, and hence, upon petition for family allowance, partition, accounting, or distribution, he is entitled to be represented in such proceedings of administration. (2 Alexander on Wills, 961, sec. 640; 2 Woerner on Administration, 2d ed., 1354, sec. 1240; *Wm. Hill Co.* v. *Lawler,* 116 Cal. 359 [48 Pac. 323]; *Lowery* v. *Hawker,* 22 N. D. 318 [37 L. R. A. (N. S.) 1143, 133 N. W. 918].) But because he may be interested in the administration or distribution of the estate it does not follow that he may participate, as an interested party, in the contest of the will, or in a petition to set the probate thereof aside. In concontemplation of law, so far as the pretermitted heir is concerned, there is no will. The title of the pretermitted heir to his share of the property vests absolutely at the death of the testator, subject only to administration, and is in no way affected by the mere process of probating the

will. The pretermitted heir is not even dependent upon the probate proceedings for distribution of his share of the estate, but may resort to a proper proceeding in equity. (Code Civ. Proc., sec. 1664; 2 Alexander on Wills, 961, sec. 640.) The mere fact that the commissions allowed by law for the probating of the estate, or other costs incident to the process of administration, may be less in another jurisdiction, or that it may be less inconvenient, or more advantageous to the petitioner, that the probate proceedings shall be conducted elsewhere, is not the sort of an interest contemplated by law, which will authorize one to contest a will. The contestant's interest must be a present pecuniary interest. The question of incidental costs of administration may be controlled by contract between the parties involved. Both the costs of administration, and the matter of advantage or convenience to the litigant, are too remote and uncertain to constitute such an interest as will authorize the contest of a will.

In the instant case, the revoking of the ancillary probate is not claimed to have been granted by virtue of the authority to contest a will pursuant to section 1327, Code of Civil Procedure. Not being interested in the will of the deceased, the pretermitted heir was not authorized to contest the will. Can it then be said that she would nevertheless be entitled to maintain an action to revoke the ancillary probate proceedings, because she is interested in the administration of the estate, as distinguished from the process of probating the will? The right to revoke the proceedings for the probate of a will depends as much upon statutory authorization as does the contest of the will itself.

A careful examination of the provisions of article IV of the Code of Civil Procedure convinces us that the right to contest a will after probate thereof, is confined to persons *interested in the will*. That article is headed "Contesting Will After Probate." Section 1327 reads, in part: "When a will has been admitted to probate, *any person interested* may . . . contest the same, or the *validity* of the will." The subject referred to in this clause is unquestionably the "will," and not the probate proceedings. The reasonable and natural way of construing this section is that "when a will has been admitted to probate, any person interested (in the will) may . . . contest the same, or the validity of the

will." This construction seems to be supported by reference to the language of section 1333 of the same chapter, which reads: "If no person, within one year after the probate of a will, *contest the same,* or the *validity thereof,* the probate of the will is conclusive." Clearly, by the terms of this section, it is the failure to contest the *will,* which makes the probate thereof conclusive.

In the *Estate of Bergin,* 100 Cal. 376 [34 Pac. 867], the will of the deceased had been admitted to probate in Ireland. Subsequently the petition of Thomas I. Bergin, devisee under the will, supported by duly authenticated copies of the probate proceedings in Ireland, was filed. The public administrator also filed his petition for letters, which was denied. The will was admitted and ancillary letters issued to the devisee named. The court said: "The part of the code which governs this case is found in article III, chapter 2, title XI, part III of the Code of Civil Procedure, embracing sections 1322 to 1324 inclusive, under the head of 'Probate of Foreign Wills.' . . . Said article III deals specifically with the subject matter of foreign wills, and it must prevail over all conflicting provisions, as to all matters and questions arising out of the subject matter of such article. (Pol. Code, sec. 4483.) . . . We think it also clear that under the provisions of said chapter, letters of administration must be granted to a person *interested in the will,* who applies for them, in the absence of a petition by the executors."

It is true that under the law of this state a judgment or order may be set aside on the ground of fraud, mistake or lack of jurisdiction, independent of the remedy found in section 473, Code of Civil Procedure, when the application is seasonably made and the fraud or misrepresentation is alleged and proved. (*Baker* v. *O'Riordan,* 65 Cal. 368 [3 Pac. 232]; *Norton* v. *Atchison, T. & S. F. Ry. Co.,* 97 Cal. 388 [33 Am. St. Rep. 198, 30 Pac. 585, 32 Pac. 452]; *People* v. *Thomas,* 101 Cal. 571 [36 Pac. 9].) But the petition in this matter failed to allege, and there was no evidence to prove, fraud, or other facts depriving the pretermitted heir, or those who represented her, from a full and a fair hearing. In 3 Alexander on Wills, at page 2025, it is said: "The right of a court of probate to set aside its orders or decrees is a power which is equitable in its nature. In order to justify a court of probate to set aside an order admitting the

will and granting letters testamentary, the party attacking the order should show not only that it was secured through fraud, accident or mistake, or without the legal proofs required by law, but it should also show some substantial, equitable ground why, it would be inequitable and unjust (or detrimental to his pecuniary interests) to allow the order which he attacks to stand, and that he was prevented from availing himself of his proofs at the original hearing because of fraud, accident or mistake, unmixed with any fraud or negligence on his part.''

The Los Angeles court had jurisdiction of the subject matter, and of the *res*, so as to make its original decree granting ancillary probate of the testator's will, valid as against collateral attack. The pretermitted heir possessed no such interest as authorized her to petition for a revocation of the ancillary probate proceedings. Her petition constituted a collateral attack upon the former decree of the Los Angeles court granting ancillary probate, and was also a collateral attack upon the original decree of the Texas court admitting the will to probate. For the foregoing reasons the order setting aside the decree of the court below was erroneous.

The judgment is reversed.

Waste, C. J., Richards, J., Curtis, J., and Seawell, J., concurred.