[Civ. No. 11224.   First Appellate District, Division One.—January 10, 1940.]

In the Matter of the Estate of EMILIE KLEPSCH, Deceased. HENRIETTA AKERS, Appellant, v. MARY VEITCH et al., Respondents.

484

Walter E. Dorn for Appellant.

S. T. Hogevoll and Nathan Merenbach for Respondents.

PETERS, P. J.—Henrietta Akers appeals from a judgment dismissing her petition for the revocation of the will of Emilie Klepsch, deceased, and from the order denying her motion for a new trial. The last order is not appealable, and the appeal therefrom should be dismissed. (*Estate of Ivey,* 110 Cal. App. 561 [294 Pac. 420].)

Emilie Klepsch died testate in San Francisco in April, 1937. On October 6, 1937, a will of the deceased, naming Mary Veitch and John A. Koehler as principal legatees, and not mentioning Henrietta Akers, was admitted to probate,

and Mary Veitch was appointed executrix. On November 12, 1937, appellant, Henrietta Akers, claiming to be the adopted daughter of the decedent, filed a petition for the revocation of the probate of the will on the grounds that the same had been executed as the result of duress, menace, fraud and undue influence of the principal legatees; that the decedent was of unsound mind at the time of the execution of the will, and that the will does not bear the true signature of the decedent.

On the trial of the will contest, the trial judge properly ruled that the issue as to whether the contestant was a person interested in the estate should be tried preliminary to the trial of the contest. In support of her contention that she was the adopted daughter of the decedent, appellant offered in evidence the judgment roll in a certain proceeding instituted by one Rose Cuneo to restore the alleged destroyed records of the adoption of appellant by decedent. This judgment of restoration of the adoption papers was recorded November 9, 1937, and three days later the present will contest was instituted. It appeared from the judgment roll that the restoration proceedings had been instituted by a stranger to the proceedings and that no service or notice was given to the executrix of the will, to the legatees, or to any person other than to Henrietta Akers. When this judgment roll was offered in evidence the trial judge refused to admit it on the ground that the judgment was void on its face. The trial judge offered appellant full opportunity to offer other evidence of the fact of adoption, but this offer was refused. The trial court thereupon, on motion of respondents, dismissed the petition to revoke the probate of the will.

Appellant contends that at the time the judgment roll in the restoration proceeding was presented in the will contest, the judgment of restoration had become final; that respondents at least had constructive knowledge of the restoration judgment a few days after it was rendered when the will contest was filed by appellant; that respondents did not move in any court to have the judgment of restoration set aside, did not move under section 473 of the Code of Civil Procedure, nor bring an independent suit in equity to have the judgment set aside; that these three remedies were the only remedies open to respondents; that a collateral attack cannot be now made on the restoration judgment. Respondents re-

ply that the judgment of restoration is void on its face, and therefore was totally ineffectual for any purpose. With this contention we agree.

The judgment roll that was refused admission into evidence discloses the following:

The petition for the restoration of the adoption papers was not filed by the appellant Henrietta Akers, but was filed by one Rose Cuneo, who alleges that she is a "personal friend and well acquainted" with Henrietta Schuhrer, who is now Henrietta Akers, and also well acquainted with the real mother and father of Henrietta, as well as with the decedent and her husband, and "as such friend of the respective parties named herein, is probably the only person who is familiar or remembers anything in relation to the adoption of" appellant. It should be mentioned that, at the time this petition was filed, the blood mother and father of Henrietta were dead, as well as decedent and her husband, and that Henrietta Akers was then an adult, and, so far as the record shows, laboring under no disability of any kind. There are no other allegations in the petition showing any interest of Rose Cuneo in this petition, nor any allegation that the petition was brought on behalf of Henrietta Akers.

The petition then recites that in June, 1897, a proper petition for the adoption of Henrietta Akers was filed in San Francisco by Emilie Klepsch and her husband; that the petition came on for hearing before Judge Coffey, then a judge of the Superior Court in and for the City and County of San Francisco; that petitioner Rose Cuneo, the mother and father of Henrietta, Henrietta, and Mr. and Mrs. Klepsch were all present in court at the hearing of the adoption proceeding; that in open court the proper documents were signed and Judge Coffey signed the decree of adoption. The petition then recites that all of the original documents relating to the adoption were destroyed in the 1906 fire. Petitioner Rose Cuneo prays that the documents be restored.

The statute under which the court purported to act in restoring the adoption record is entitled: "An act relating to the restoration of court records which have been lost, injured or destroyed by conflagration or other public calamity." (Stats. Ex. Sess. 1906, p. 73; Deering's Gen. Laws [1937] Act 1028.) Section 1 of the act provides for restoration of destroyed documents when a certified copy exists.

Section 2 is the section applicable to the present case, it covering situations where a certified copy does not exist. So far as pertinent here, this section provides that whenever in any action or special proceeding any court record is lost, injured or destroyed by any public calamity, and no certified copy exists "*any party or person interested therein* may make written application to the court to which the same belongs, verified by affidavit or affidavits, showing such loss, injury or destruction . . . and that such loss, injury, or destruction, unless supplied or remedied *will or may result in damage to the party or person making such application,* and thereupon such court shall cause notice of such application to be given, as provided in section ten hundred and ten to ten hundred and seventeen inclusive of the Code of Civil Procedure". (Italics ours.) The act then provides that if satisfied by the showing made, the court shall make an order restoring the lost, injured or destroyed record "which order shall have the same effect that such original would have had if the same had not been lost, injured or destroyed, so far as concerns the party or persons making such application, and the persons who shall have been notified, as provided for in this section"; that judgments and records in *in rem* proceedings may be restored "upon like notice to all persons who have appeared therein, and notice by publication or postings to all persons who have not appeared for not less than ten days, as the court may order, and the same when restored shall have the same effect upon all persons who have been personally served with notice of such application as the original, and as to all other persons the same shall be *prima facie* evidence of the contents of such original".

■ This statute is but one of a series of acts passed as a result of the destruction of the public records of San Francisco by the fire of 1906. The various statutes are collected and referred to in 22 California Jurisprudence, p. 644, section 51. Such laws are, of course, remedial in their nature, and should be given a liberal construction to effectuate the objects for which they were intended. (*Estate of Patterson,* 155 Cal. 626 [102 Pac. 941, 132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654] ; *Hynes* v. *All Persons, etc.,* 19 Cal. App. 185 [125 Pac. 253].) However, the courts cannot, under the guise of a liberal construction, extend the benefits of the statutes to persons not included within their

purview. Such statutes are special in nature, and one who proceeds under such a special statute must reasonably comply with the conditions set forth in the statute.

Tested by these standards it is clear that the judgment of restoration here involved is void on its face. In the first place, the benefits of the statute may only be invoked by a "party or person interested" and only, then, when the written application discloses that the loss, injury or destruction of the court record "unless supplied or remedied will or may result in damage to the party or person making such application". As already indicated, the judgment discloses that the present application was filed not by the adopted child, now an adult, but by a person named Rose Cuneo, who describes herself as a "personal friend" of the parties involved, and as "probably the only person" who knows the facts relating to the adoption. Obviously, Rose Cuneo was not a person legally interested in the original adoption, nor in the restoration proceedings, nor has Rose Cuneo any interest that would or could be adversely affected by the failure to restore the documents. The judgment roll discloses that she is a total stranger to both proceedings. Under such circumstances the trial court at no time secured jurisdiction of the restoration proceedings. To permit a stranger to invoke the jurisdiction created by the statute in question would lead to abuses too obvious to mention—abuses which the legislature clearly foresaw and sought to prevent by the requirements above mentioned.

In the second place, the judgment roll in the restoration proceedings discloses that no notice was given by appellant, or by Rose Cuneo, either personal or by publication, to any interested person as required by the statute. Appellant contends that the only persons legally interested in the adoption proceedings were her parents, her adopting parents and herself, and that, since she is the sole survivor, no service was necessary to anyone but herself. She further contends that neither the executrix of the estate of the woman she contends is her adopted mother, nor the legatees of her will, were persons interested in the restoration proceedings. This contention is made in spite of the fact that if the restoration proceedings resulted in the restoring of the alleged adoption, the appellant would then be a pretermitted heir, and as such would inherit the entire estate. It would seem quite clear

that the restoration statute requires notice to be given not only to the parties to the original proceeding, the record of which is sought to be restored, but also to all known persons whose interests would be affected by the restoration decree. Clearly, if Emilie Klepsch were still alive, no proceeding to restore alleged adoption papers declaring she was the adopted mother of appellant would have been valid without service on her. But appellant contends that no service was necessary on the executrix, even though, by such restoration proceedings, if successful, the expressed desires of the testatrix in her will would be defeated. We think that the executrix of the estate sufficiently represents the testatrix to require service upon her before any proceedings to restore records that would adversely affect the estate can be held to be valid. Although we have been referred to no case directly in point, the following cases establish principles which, by analogy, are applicable here: *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 Pac. 42, 40 A. L. R. 110]; *In re Dahnke*, 64 Cal. App. 555 [222 Pac. 381]; *In re Sielcken*, 51 Cal. App. 538 [197 Pac. 668]. There is nothing in *Estate of Grazzini*, 31 Cal. App. (2d) 168 [87 Pac. (2d) 713], nor in the other cases cited by appellant, contrary to the views herein expressed.

█ This determination that the trial court properly excluded from evidence the judgment roll of the restoration proceedings for the reasons given, although it will result in preventing appellant from contesting the will on the grounds of mental incompetency and undue influence, will not adversely affect the rights of appellant, if, in fact, in a proper proceeding, she can prove that she is the adopted daughter of Emilie Klepsch, and therefore a pretermitted heir. █
A pretermitted heir, under the provisions of section 90 of the Probate Code, succeeds to the estate of his parent, as of the date of the death of such parent, in spite of the will and in hostility to it. So far as the pretermitted heir is concerned, in contemplation of law, there is no will, and he may resort to a proper suit in equity to establish his rights. (*Estate of Sankey*, 199 Cal. 391 [249 Pac. 517].)

The appeal from the order denying the motion for a new trial is dismissed; the judgment appealed from is affirmed.

Ward, J., and Goodell, J., *pro tem.*, concurred.