[Civ. No. 1619. First Appellate District.—August 18, 1915.]

## MARGARET HOLMES, Respondent, v. PATRICK O'BRIEN, Respondent; MARY R. CASEY, Appellant.

ACTION TO QUIET TITLE—DELIVERY OF DEED—SUFFICIENCY OF EVIDENCE. In this action to quiet title it is held that the evidence was sufficient to sustain the finding as to the making, execution, and actual delivery of the deed to plaintiff by her father, upon which deed plaintiff based her right to the property.

ACTION UNDER McENERNEY ACT—WHEN PARTY NOT COMPELLED TO APPEAR IN.—The plaintiff herein was not bound to inject herself into a suit brought by her father under the so-called McEnerney Act, in which she had not been made a party, but from which she had been apparently designedly omitted, in order to obtain the equitable relief to which she was entitled.

ID.—FRAUD—SUFFICIENCY OF EVIDENCE.—It is held further in this case that the evidence was sufficient to support the finding of the trial court that the plaintiff's grantor acted at least constructively fraudulently in instituting a proceeding to quiet his title under the so-called McEnerney Act.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. J. O. Moncur, Judge presiding.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche, for Appellant.

Edwin T. Cooper, and W. W. Watson, for Respondent, Margaret Holmes.

Coffey & Coffey, for Respondent, Patrick O'Brien.

RICHARDS, J.—This was an action to quiet title to a piece of real property in the city and county of San Francisco, in the course of which the plaintiff sought to have set aside a decree obtained by Patrick O'Brien, one of the defendants, quieting his title to the same premises.

There is no very material dispute about the facts of the case, which the record shows to be substantially these: The plaintiff is one of the daughters of said defendant Patrick

O'Brien and the other defendant and the appellant herein is his other daughter. During the last illness of Patrick O'Brien's wife and the mother of the plaintiff and the appellant, there was some family discussion with reference to the plaintiff coming back to the family home and taking care of the father and mother, receiving a deed to the premises as the consideration for such care, as a result of which the plaintiff, who had been married, did return home and did care for her mother until the latter's death. Thereafter and in the fall of 1903 the father solicited her to return and care for him, promising her to attend to the deed of gift. She accordingly with her two daughters made her home with her father on the premises in question, and undertook his support by her own labor and out of her own funds. Not long after this the father went of his own accord to a notary, and had the deed drafted, and then brought the notary with the deed to the home and presence of the plaintiff, and there the notary read the instrument, which had been duly signed and acknowledged, and then in the presence of the grantor handed it to the plaintiff. It was then by her handed back to the father, who wished to place it in the custody of Rev. M. P. Ryan, to be held by him—as he then and there stated—until his death and then to be recorded. The reason the grantor assigned for this was that he did not wish the grantee to mortgage the property while he lived. The deed was taken by him to the priest, and there remained until the year 1907. In the mean time the plaintiff had continued her support of her father, and had also caused to be erected a more substantial house upon the property costing two thousand dollars, describing herself in the recorded contract for its erection as the owner of the property. In October, 1907, O'Brien went to the priest and obtained the deed and destroyed it, and then caused to be commenced a proceeding under the McEnerney Act to quiet his title to the property. The plaintiff was not expressly made a party to this proceeding, nor was any mention or reference made to her residence upon or claim of title to the premises, nor was any personal service of process made upon her, nor was she otherwise apprised of the institution or course of these proceedings until after the orders and decrees therein had been made—during all of which time she was supporting her father upon the premises as before. Her first direct knowledge of his conduct came in the form of a letter from

his lawyer advising her to vacate the premises. She thereafter instituted this action, making her sister Mary R. Casey a codefendant with her father, he in the mean time having conveyed to her a portion of the premises.

The plaintiff recovered judgment in the trial court, from which judgment and from the order denying a new trial the defendant Mary R. Casey is the only appellant.

There are two main points urged upon this appeal. The first is that the evidence does not sustain the finding of the court that there was a delivery of the deed from Patrick O'Brien to the plaintiff so as to pass the title to her. It is sufficient upon this point to say that we think that the evidence presented upon plaintiff's behalf with respect to the making, execution, and actual delivery of the deed in question to her at the time of the visit of the notary who drew the conveyance, and then accompanied the grantor, her father, to her home upon the premises, and there formally handed the instrument to her, was sufficient to sustain the court's finding in that regard. It is true that the father insisted upon retaining a certain measure of control over the conveyance and property, but the evidence clearly discloses that this was only to the extent of seeking to protect himself against a possible encumbrance of the home during his lifetime, and that he imagined this would be accomplished if he kept the deed from being recorded by giving it into the custody of the priest. That this was the measure of his intent the evidence quite conclusively shows; while his own declarations made on various occasions and to several witnesses, tend strongly to prove that he intended the plaintiff to become the present owner of the property at the time he caused the notary to read and hand the deed to her. Whatever conflicts there were in the evidence upon this point were resolved by the trial court in favor of the plaintiff, and with its discretion we will not interfere.

The other point upon which the appellant insists for a reversal is that it was the legal duty of the plaintiff herein to have appeared in the McEnerney proceeding after she had learned of its existence, and there sought her remedy by moving to open the default, set aside the decree, and obtain whatever remedy she was entitled to in that case. But in our opinion the plaintiff was not bound to inject herself into a proceeding to which she had not been made a party, but from which she had apparently been designedly omitted, in order to obtain

the equitable relief to which she was entitled. A court of equity was the ampler forum, in which she was entitled to initiate and in a measure control her own action to quiet her title to the premises, and set aside the decree in the former proceeding obtained, as she alleged, through fraud. (*Estudillo* v. *Security etc. Co.*, 149 Cal. 556, [87 Pac. 19]; *Bacon* v. *Bacon*, 150 Cal. 477, 89 Pac. 317].)

The appellant, however, contends that the evidence is not sufficient to justify the court's finding that Patrick O'Brien acted fraudulently in the institution of his proceeding to quiet title under the McEnerney Act, but with this contention we must disagree. Whatever his motives may have been it is plain that he was badly advised, and however honest his intentions, his acts amounted at least constructively to a fraud upon the plaintiff, who had not only been supporting him for years, but who, with his knowledge and acquiescence, had placed valuable improvements upon the property, treating it openly as her own. We think the findings of the court are fully supported by the evidence in this regard.

Discovering no other error in the record, the order is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 15, 1915.