[Civ. No. 18986. First Dist., Div. One. May 15, 1961.]

GLADYS TORREGANO STEVENS, Appellant, v. ALFRED
TORREGANO, Respondent.

Bergen Van Brunt for Appellant.

Wallace, Garrison, Norton & Ray for Respondent.

DUNIWAY, J.—We granted a rehearing in this matter primarily to give further consideration to the question of whether plaintiff should be given leave to amend. We have concluded that she should be given such leave, as to her second, third and fourth causes of action only. We adhere to our previous views as to the present insufficiency of the complaint. They are as follows:

Plaintiff appeals from a judgment of dismissal which followed an order granting a judgment on the pleadings as to the first cause of action of her original complaint, an order sustaining without leave to amend demurrers to the second amendment to her second, third and fourth causes of action, and a similar order relating to a demurrer to the same amendment to her fifth cause of action.

The case is a companion to *Estate of Torregano*, decided by the Supreme Court on May 24, 1960, while this appeal was pending, and reported at 54 Cal.2d 234 [5 Cal.Rptr. 137]. In

that case the present plaintiff was the appellant, and the present defendant ("Alfred") was respondent. There, the court below had held that, as a matter of law, the will of Ernest Torregano ("Ernest") indicated an intention to omit provision for appellant, so that she was not a pretermitted child under Probate Code, section 90. The Supreme Court reversed, holding that the issue is one of fact. (54 Cal.2d at p. 254.) That case involved a petition in the probate proceeding. The present action was filed because, at the time when appellant claims that she first learned of Ernest's death, the probate proceedings had progressed to a point where respondent, residuary legatee under Ernest's will, had already received assets of the estate under two decrees of partial distribution. Appellant seeks to have a constructive trust imposed upon those assets for her benefit (Civ. Code, § 2224), and to recover damages, both general and punitive. She also asks to have the decrees of distribution set aside, for an accounting, for a temporary restraining order and preliminary injunction, and for the appointment of a receiver.

"However logically professors or judges may argue in the realms of theory, there is always in case law systems such as ours the confusing influence of merits, the desire to reach a just result in a particular case that may lead us like a will o' the wisp on a dark night off the road of logic and into the bog." (Lord Justice Pearce, in American Bar Association 1960 Proceedings of the Section of International and Comparative Law, pp. 28, 30.) This is such a case. After much consideration, we have concluded that we should stay on the road. The law regarding the finality of probate decrees is too important to the prompt and orderly administration of estates and the security of titles to warrant our stepping into the bog.

The importance of protecting the finality of probate decrees is well stated in *Estate of Gardiner*, 45 Cal.App.2d 559, at page 563 [114 P.2d 643] : "To say that its judgment is final when right and interlocutory when wrong would open to attack the myriad of erroneous decrees that have confirmed the fallibility of man since Coke struck the royal shackles from the hands of a cringing judiciary. It would provide an orgy for the prurient army of litigious to the detriment of the peace, security and contentment of society."

Error is claimed in the granting of the motion for judgment on the pleadings, the sustaining of the demurrers, the setting aside of a default taken for claimed failure to answer the first

cause of action, and the failure to grant the preliminary injunction or to appoint a receiver.

1. *There was no error in denying the injunction or refusing to appoint a receiver.*

 The order refusing to grant the injunction was appealable (Code Civ. Proc., § 963, subd. 2), but was not appealed. Moreover, both the granting of a preliminary injunction and the appointment of a receiver are within the court's discretion (42 Cal.Jur.2d 341, Receivers, § 10; 27 Cal.Jur.2d 109, 110, Injunctions, § 8). The court below, having determined that plaintiff was entitled to no relief, naturally denied the interim relief sought. (*Cf. Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 2 [330 P.2d 385].)

2. *There was no error in setting aside the default.*

 The question arises in this way. On May 28, the court overruled a general demurrer to the first cause of action and sustained it, with leave to amend, as to the others. Respondent's time to plead was kept open, and on July 9, appellant filed amendments to the second, third and fourth causes of action, which also added a fifth. On August 16, respondent filed a general demurrer to each cause of action, including the first, and the matter was argued and submitted on September 10. While the matter was under submission, and on December 5, counsel for appellant filed an "affidavit in support of request for default," reciting the overruling of the demurrer to the first cause of action, the expiration of the last extension of time, and that at the time set for hearing the demurrer on September 5, appellant's counsel asked respondent's counsel to answer. Default was entered on the same day, December 5.

On December 12, the court "dismissed" the demurrer to the first cause of action on the ground that it had been theretofore overruled, and sustained the demurrer to the remaining four, with leave to amend. The order was silent as to the time within which to answer the first cause of action. Its effect was to overrule the demurrer, and under rule 2, Rules of the Judicial Council for the Superior Courts, the time to answer was December 22. On December 20, respondent moved to set aside the default, on the ground that it was void because taken while the demurrer was under submission. The motion was granted on January 3, 1958, with leave to answer on or before January 6. On that day, respondent

112

obtained an order extending time to answer to February 6. On January 30, appellant moved to strike and vacate the order of January 6, extending time to answer. The next day, January 31, answer was filed. On February 26, the court granted the motion of January 30, to strike and vacate the order of January 6, extending time.

Under Code of Civil Procedure, section 585, default may be entered if defendant fails to answer and no demurrer or notice of motion to strike is on file. See also Code of Civil Procedure, section 432. Both the filing of a demurrer (Code Civ. Proc., § 430) and the filing of a motion to strike (Code Civ. Proc., § 435) extend the time to answer. Moreover, the point that a complaint does not state a cause of action is never waived (Code Civ. Proc., § 434). ██ The point may be raised by answer (*Bracker* v. *American Nat. Food, Inc.*, 133 Cal.App.2d 338, 339-340 [284 P.2d 163]) and it is not improper to do so, even though a previous demurrer on the same ground has been overruled. ██ Such a ruling is interlocutory (39 Cal.Jur.2d 240, Pleading, § 166), and the court may, if it is willing to do so, hear the question again and decide it the other way. It has ample power over counsel, as officers of the court, to prevent imposition upon it by repeated demurrers or answers of this kind.

██ On December 5, when the default of respondent was taken, there was on file a general demurrer to the first cause of action, valid on its face, and raising a question that could also be raised by answer. It is not the business of the clerk, whose duties in entering defaults are ministerial, to pass upon the question of the sufficiency or validity of a pleading which has been filed within time as extended by the court. (28 Cal.Jur.2d 640, Judgments, § 20.) Respondent therefore correctly urges that the default was void, and the court properly set it aside on January 3. (Code Civ. Proc., § 473, last paragraph.) The subsequent order of February 26, vacating the order of January 6 that extended the time to file the answer, was nugatory because by that time an answer was on file, and had been for 27 days. (*Cf. Reher* v. *Reed*, 166 Cal. 525 [137 P. 263, Ann.Cas. 1915C 737]; *Baird* v. *Smith*, 216 Cal. 408 [14 P.2d 749].) The fact that the order of January 6 was signed by a different judge from the judge who made the order of January 3 is immaterial. Both were judges of the same court, with the same powers (13 Cal. Jur.2d 752, Courts, § 194.) Nor would the fact, if it be a fact, that the January order was obtained without compliance

with rule 22, Rules for the Superior Court, make the order void. (*Cf. Connell* v. *Higgins,* 170 Cal. 541 [150 P. 769].)

Appellant's position is highly technical, and it would have been quite unfair to respondents to allow the default to stand, as to one cause of action out of five, each of which related to the same basic facts.

3. *The first cause of action is insufficient.*

It alleges, in substance, that appellant is the daughter and sole surviving issue of Ernest, who left no spouse, and that she is a pretermitted child under Probate Code, section 90, and as such is entitled to the entire estate. (Prob. Code, § 222.) It pleads the death of Ernest, the probate of his will, and the appointment of Bank of America as executor. It then states that respondent Alfred has received property of the estate, "resulting from two partial distributions." There are also allegations that respondent will dispose of the property so received unless restrained or subjected to the appointment of a receiver.

The court's minute order states that under the terms of Ernest's will, a copy of which was attached to the amendments to the second, third and fourth causes of action, the plaintiff was specifically and effectively disinherited. This ground has been found erroneous by the Supreme Court. But it does not follow that the first cause of action is sufficient. For all that appears from that cause of action, appellant had full notice of the probate proceedings and participated therein, in which case she could not attack the decrees of distribution, which are supported by a presumption of regularity.

Ever since the Constitution of 1879 was adopted, decrees of the superior court, sitting in probate, have been held to be just as much final judgments as any other judgment of the superior court. They are entitled to the same presumptions, including the presumption that the court had jurisdiction to render them, as any other judgment. (*Burris* v. *Kennedy,* 108 Cal. 331 [41 P. 458] ; *Fletcher* v. *Superior Court,* 79 Cal.App. 468 [250 P. 195] ; *Gale* v. *Witt,* 31 Cal.2d 362 [188 P.2d 755] ; *Johnson* v. *Canty,* 162 Cal. 391 [123 P. 263] ; *Security-First Nat. Bk.* v. *Superior Court,* 1 Cal.2d 749 [37 P.2d 69] ; *Wood* v. *Roach,* 125 Cal.App. 631 [14 P.2d 170].) Jurisdiction of the court, sitting in probate, is exclusive, as to those matters committed to it by law. (*Matter of Will of Bowen,* 34 Cal. 682, 683 ; *Castro* v. *Richardson,* 18 Cal. 478 ; *King* v. *Chase,* 159 Cal. 420 [115 P. 207] ; *State of*

*California* v. *McGlynn,* 20 Cal. 233 [81 Am.Dec. 118]; *Tracy* v. *Muir,* 151 Cal. 363, 371 [90 P. 832, 121 Am.St.Rep. 117]; *cf. Toland* v. *Earl,* 129 Cal. 148 [61 P. 914, 79 Am.St.Rep. 100].)

 In two respects, probate decrees are entitled, in a sense, to a greater finality than ordinary judgments in personam. First, they are and always have been, in rem, binding upon all persons interested. (*Estate of Allen,* 176 Cal. 632 [169 P. 364]; *Dabney* v. *Dabney,* 54 Cal.App.2d 695 [129 P.2d 470]; *Fletcher* v. *Superior Court, supra,* 79 Cal.App. 468; *Estate of Henderson,* 196 Cal. 623 [238 P. 938]; *Murray* v. *Superior Court,* 207 Cal. 381 [278 P. 1033]; *Security-First Nat. Bk.* v. *Superior Court, supra,* 1 Cal.2d 749; *Warren* v. *Ellis,* 39 Cal.App. 542 [179 P. 544]; *William Hill Co.* v. *Lawler,* 116 Cal. 359 [48 P. 323]; *Wood* v. *Roach, supra,* 125 Cal.App. 631.)

Second, constructive notice is sufficient, even though it may not in fact give actual or personal notice, in a particular case, to a particular heir, devisee, legatee or other interested person. This is because the proceeding is in rem, and also because the "right" to take as heir or by will is really a privilege, completely within legislative control. (*Estate of Bump,* 152 Cal. 274, 276 [92 P. 643]; *Estate of Davis,* 136 Cal. 590 [69 P. 412]; *In re Estate of Griffith,* 84 Cal. 107 [23 P. 528, 24 P. 381]; *Hanley* v. *Hanley,* 114 Cal. 690 [46 P. 736]; *Mulcahey* v. *Dow,* 131 Cal. 73 [63 P. 158]; *Murray* v. *Superior Court, supra,* 207 Cal. 381; *Security-First Nat. Bk.* v. *Superior Court, supra,* 1 Cal.2d 749; *Tracy* v. *Muir, supra,* 151 Cal. 363.)

The matter is well stated, by Justice Shaw, in *Otto* v. *Long,* 144 Cal. 144, at pages 147-148 [77 P. 885]: "Nor can the fact that no notice is required to be given before making the order or the fact that it is not appealable affect its validity against the heirs and devisees. The right of inheritance, the power of testamentary disposition, the nature and mode of the proceeding for administration, as well as the character of the evidence by which proof of the fact of disposition shall be preserved and the right of appeal in probate matters, are all within the exclusive control of the Legislature. The persons who, by grace of the statute, are designated or constituted heirs or devisees, have no ground for a claim that they are deprived of their property without due process of law, merely because the same statutory law which provides that they shall inherit and that property may be disposed of

by will has also provided that, notwithstanding such heirship or testamentary disposition, the court having jurisdiction of the estate of the deceased before distribution may under certain conditions, to be by it determined without notice, set apart some or all of the estate absolutely to the widow, and no appeal is allowed from the order. They take the estate subject to that very contingency, and they are not deprived of it in the sense intended by the constitutional inhibition when that contingency occurs.''

Thus it has been repeatedly held that: "By giving the notice in the manner prescribed by the statute, the court acquires jurisdiction over all persons entitled to assert any claim to the estate, and, whether they appear and present their claim for adjudication, or fail to appear and suffer default, the judgment is conclusive upon them.'' (*Cunha* v. *Hughes,* 122 Cal. 111, at p. 112 [54 P. 535, 68 Am.St.Rep. 27]; *Curtis* v. *Underwood,* 101 Cal. 661, 669 [36 P. 110]; *Estate of Davis, supra,* 136 Cal. 596; *Hewett* v. *Linstead,* 49 Cal.App.2d 607 [122 P.2d 352]; *Security-First Nat. Bk.* v. *Superior Court, supra,* 1 Cal.2d 749; *Tracy* v. *Muir, supra,* 151 Cal. 363; *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105].)

In *Estate of Leonis,* 138 Cal. 194 [71 P. 171], in holding that an order of sale, when final, is conclusive, the court said, at page 200: "The main claim . . . was, that the heirs had no notice or knowledge of the 'filing or granting of the petition for sale of real estate.' The heirs had notice. The estate had been long pending in court. The statutory mode of acquiring jurisdiction was followed. The court acquired jurisdiction, and, although the notice was constructive, it was none the less binding upon all the world.'' Similarly, the court said, in *Lynch* v. *Rooney,* 112 Cal. 279, at page 287 [44 P. 565]: "If such a thing could be done the stability of judgments and decrees would be a thing of the past. Decrees of distribution would be as unstable as the sands, for omitted heirs from such decrees would be seeking to have involuntary trusts declared thereon at most inopportune times, and in direct opposition to the law as declared by section 1908 of the Code of Civil Procedure pertaining to the conclusiveness and finality of judgments and decrees.'' See also *In re Estate of Maxwell,* 74 Cal. 384, 385 [16 P. 206].

Each separate proceeding in the probate of an estate culminating in a decree authorized by the Legislature

and thus within probate jurisdiction, results in a judgment and, when it becomes final, that judgment is binding on all interested parties, as to the matters that it determines. (*Abels* v. *Frey*, 126 Cal.App. 48 [14 P.2d 594]; *Estate of Davis*, 151 Cal. 318, 323 [86 P. 183, 90 P. 711, 121 Am.St.Rep. 105].) Specifically, the foregoing rules apply to:

(1) A decree admitting a will to probate (*Castro* v. *Richardson, supra*, 18 Cal. 478; *Estate of Davis, supra*, 136 Cal. 590; *Estate of Davis, supra*, 151 Cal. 318, 323; *Langdon* v. *Blackburn*, 109 Cal. 19 [41 P. 814]; *Rogers* v. *King*, 22 Cal. 71; *Rosenberg* v. *Frank*, 58 Cal. 387, 403; *Estate of Ryan*, 177 Cal. 598 [171 P. 297]; *San Diego Trust etc. Bank* v. *Heustis*, 121 Cal.App. 675 [10 P.2d 158]; *Tracy* v. *Muir, supra*, 151 Cal. 363).

(2) A decree determining heirship (*In re Estate of Burton*, 93 Cal. 459, 461 [29 P. 36]; *Estate of Blythe*, 110 Cal. 231, 234 [42 P. 643]; *Quirk* v. *Rooney*, 130 Cal. 505 [62 P. 825]).

(3) A decree of distribution, either partial (*Gladding* v. *Superior Court*, 7 Cal.2d 408 [60 P.2d 857]; *Hardy* v. *Mayhew*, 158 Cal. 95 [110 P. 113, 139 Am.St.Rep. 73]; *Estate of McCarthy*, 36 Cal.App.2d 194 [97 P.2d 480]) or final (*Abels* v. *Frey, supra*, 126 Cal.App. 48, where the rule was applied against a pretermitted heir; *Carr* v. *Bank of America etc. Assn.*, 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282]; *Clavey* v. *Loney*, 80 Cal.App. 20 [251 P. 232]; *Cook* v. *Cook*, 17 Cal.2d 639, 652 [111 P.2d 322]; *Cooley* v. *Miller & Lux*, 156 Cal. 510 [105 P. 981]; *Crew* v. *Pratt*, 119 Cal. 139, 149 [51 P. 38]; *Cunha* v. *Hughes, supra*, 122 Cal. 111, 112; *Dabney* v. *Dabney, supra*, 54 Cal.App.2d 695; *Federal Farm Mortg. Corp.* v. *Sandberg*, 35 Cal.2d 1 [215 P.2d 721]; *Ferguson* v. *Ferguson*, 58 Cal.App.2d 811 [137 P.2d 735]; *Estate of Loring*, 29 Cal.2d 423, 427-428 [175 P.2d 524]; *McLellan* v. *McLellan*, 17 Cal.2d 552 [110 P.2d 1034]; *Metzger* v. *Vestal*, 2 Cal.2d 517 [42 P.2d 67]; *Ringwalt* v. *Bank of America etc. Assn.*, 3 Cal.2d 680 [45 P.2d 967]; *Estate of Schmierer*, 168 Cal. 747 [145 P. 99]; *Smith* v. *Vandepeer*, 3 Cal.App. 300 [85 P. 136]).

It is presumed that all notices required by law were duly given. If it is claimed that any particular notice was not given, that fact must be alleged. (*Abels* v. *Frey, supra*, 126 Cal.App. 48; *Beltram* v. *Hynes*, 40 Cal.App. 177 [180 P. 540]; *Estate of Chapman*, 158 Cal. 740 [112 P. 302]; *Fletcher* v. *Superior Court, supra*, 79 Cal.App. 468; *Gale* v. *Witt, supra*, 31 Cal.2d 362; *In re Griffith, supra*, 84 Cal.

107; *Langdon* v. *Blackburn, supra,* 109 Cal. 19; *Miller* v. *Pitman,* 180 Cal. 540 [182 P. 50] ; *Security-First Nat. Bank* v. *Superior Court, supra,* 1 Cal.2d 749; *Westphal* v. *Westphal, supra,* 20 Cal.2d 393.)

There were no such allegations in the first cause of action, and the judgment on the pleadings, as to it, was proper. It is apparent that this cause of action is not based upon any claim of extrinsic fraud or mistake; but solely upon the theory that, as a pretermitted child, appellant is entitled to take the estate whether the statutory notices were given in the probate proceedings or not, and even if she had appeared therein. This is clearly not the law.

It makes no difference that, as appellant contends, she takes title to her share of the estate immediately upon the death of the decedent. The same is true of any heir, legatee or devisee, yet his rights are taken subject to administration (Prob. Code, § 300; 16 Cal.Jur.2d, Descent & Distribution, §§ 17, 18, pp. 34-39; 53 Cal.Jur.2d, Wills, § 322, p. 585; § 324, p. 586), and may be divested in the course of administration, and even by an erroneous decree, in the absence of extrinsic fraud or mistake. Appellant as a pretermitted child, is in no better position. She still takes as an heir, her rights coming into existence by reason of Ernest's death. (*In re Estate of Grider,* 81 Cal. 571 [22 P. 908] ; *Estate of Loyd,* 175 Cal. 699 [167 P. 157] ; *Pearson* v. *Pearson,* 46 Cal. 609; *Estate of Philippi,* 71 Cal.App.2d 127 [161 P.2d 1006] ; *Smith* v. *Olmstead,* 88 Cal. 582 [26 P. 521, 22 Am.St.Rep. 336, 12 L.R.A. 46].) Her rights are still subject to administration. (*Estate of Bump, supra,* 152 Cal. 274; *Curtis* v. *Underwood,* 101 Cal. 661 [36 P. 110] ; *Ferguson* v. *Ferguson, supra,* 58 Cal.App.2d 811; *In re Grider, supra,* 81 Cal. 571; *Johnson* v. *Superior Court,* 102 Cal.App. 178 [283 P. 331] ; *Estate of Sankey,* 199 Cal. 391, 405 [249 P. 517] ; *Estate of Smith,* 145 Cal. 118 [78 P. 369].)

The dictum in *Estate of Klepsch,* 36 Cal.App.2d 483 [97 P.2d 987], is not to the contrary. The fact that a child is pretermitted does not, *ipso facto,* give rise to a cause of action in equity. The child would have such a cause of action only if the decree of the probate court had been procured by extrinsic fraud or mistake, and this question was not before the court. Nor is such a question presented to this court, under the first cause of action. Nothing is to be gained by permitting appellant to amend that cause of action to show

extrinsic fraud or mistake; the second, third and fourth causes of action are based upon those grounds.

4. *The second, third and fourth causes of action, as amended, are insufficient, but may be further amended.*

The second contains substantially the same allegations as the first, with the addition of considerable evidentiary matter as to the birth of Ernest, his race, plaintiff's birth, etc. It then states, "That said defendant Alfred Torregano knowingly withheld and concealed the said information that Gladys Torregano Stevens was the sole heir at law of the" decedent. This is alleged both in connection with the petition for probate, which (by implication, not direct allegation) did not name appellant as an heir (Prob. Code, § 326) and the giving of notice by mail, which, it is alleged, she did not receive (Prob. Code, § 328). It is not alleged that notice was not published (Prob. Code, § 327), and we must presume that it was. It is further alleged that a petition to determine heirship was filed and that no notice thereof was given to appellant (Prob. Code, § 1080) because Alfred "knowingly concealed and withheld" the same information. The order determining heirship did not mention appellant. It is finally alleged that the two partial distributions were the "direct and proximate result" of Alfred's fraud. We take these allegations to mean that two statutory notices were not given to appellant: personal notice of probate, by mail, under Probate Code, section 328, and personal notice of the heirship proceeding, by mail, under Probate Code, section 1080, and that they were not given because appellant was not known to the executor.

The third cause of action repeats all of the second, and adds an affirmative allegation that the executor bank had no knowledge or information of the existence of appellant, and that as a result, by mistake, the executor did not name her in the petition for probate, did not send her notice, did not name her in the petition to determine heirship, and did not notify her of the partial distributions, but, if it had had knowledge, would have notified her of the probate and heirship proceedings and would not have petitioned for partial distribution. We note that under Probate Code, sections 1000 and 1200, the executor was not required to give appellant personal notice of the petitions for partial distribution, unless she filed a request for special notice (Prob. Code, § 1202), which she did not do. Again, these allegations show that only

the two personal notices, by mail, required by statute, were not given, and for the reason previously stated.

It is then charged that Alfred knew of the executor's mistake and wilfully and wrongfully concealed from and failed to disclose to the executor his knowledge as to appellant, and as a direct and proximate result of the "acts of" Alfred and the "mistake" of the executor, Alfred has received assets of the estate under decrees of partial distribution, and the order determining heirship was fraudulently obtained. Thus it now affirmatively appears that Alfred was not the petitioner in any of the four petitions, but the executor was.

The fourth cause repeats all of the allegations of both the second and third. It adds that Alfred knew of appellant and that she was the sole heir at law and daughter of Ernest, and that Alfred intentionally, wilfully and fraudulently withheld and concealed this information from the executor with the intention to deprive appellant of her opportunity to be heard in all of the proceedings in the estate. General damages of $250,000 and punitive damages of $50,000 are claimed.

These three causes of action are as notable for what they do not state as for what they do. It is not alleged that Alfred filed any of the petitions, or that he made any statements, either orally or in writing, either to the executor or to the court or to anyone at all, as to whether there were any heirs of Ernest, or who they were, or anything else, or that the court or the executor or any attorney or heir or legatee or anyone at all made any inquiries whatever of Alfred on the subject. It is not alleged that any of the statutory notices, except the two already mentioned, were not given. It is not alleged that the executor did not list, in the petition for probate and in the petition to determine heirship, all the heirs known to it, or that such heirs did not get the personal notice by mail that the code provides for.

In view of the cases heretofore cited, and the presumptions that the law has been obeyed (Code Civ. Proc., § 1963, subd. 33), that official duty has been regularly performed (*ibid.*, subd. 15), that the court had jurisdiction (*ibid.*, subd. 16) and that a judicial record correctly determines the rights of the parties (*ibid.*, subd. 17), and of the special effect given to orders in respect to the probate of a will or the administration of an estate (Code Civ. Proc., § 1908, subd. 1, and Prob. Code, §§ 1003, 1021, 1082), we must assume that all notices required by law were given by the executor, in each

of the proceedings in the probate court, except, of course, the two personal notices by mail to appellant. We must also assume full compliance by the executor with Probate Code, section 326, in listing the heirs, "so far as known" to it. Similarly, we must assume that notice was sent to all known heirs (that is, known to the petitioning executor), both under Probate Code, section 328, relating to probate, and Probate Code, section 1080, relating to heirship. Personal notice by mail is required to be given only to those heirs who are known to the executor. The complaint therefore fails to show any defect in any of the decrees, unless the allegations of fraud or mistake as they relate to statutory personal notice by mail to appellant, are sufficient to permit a direct attack upon them under the rules stated most recently in *Carney* v. *Simmonds*, 49 Cal.2d 84, 93-96 [315 P.2d 305].

As is usual in cases involving charges of fraud, the complaint is sprinkled with unnecessary allegations of evidentiary matter and spiced with epithets which may possibly tend to obscure the precise issues that must be decided. Moreover, there is the usual choice of the synonym which the pleader hopes will carry a pejorative connotation to the mind of the court. Thus the pleader uses such words as "concealed" and "withheld" instead of "kept silent" or "did not tell." Yet it is hornbook law that a mere failure to volunteer information is not fraudulent unless there is a duty to speak. This is not contrary to the equally well established rules that one who is asked for or volunteers information must be truthful, and that the telling of a half truth, calculated to deceive, is fraud. (*Cf*. Civ. Code, § 1710, subd. 3; *Gillespie* v. *Ormsby*, 126 Cal.App.2d 513 [272 P.2d 949].)

We are thus confronted with two narrow questions: 1. Can the ignorance of the executor, as the result of which the two notices by mail were not sent to appellant, be considered the legal equivalent of a "mistake" on its part? 2. Was Alfred under a duty to tell the executor or the court of the existence of appellant?

The fraud or mistake charged in the complaint, if sufficient, is clearly extrinsic, not intrinsic. Plaintiff's complaint is that she was thereby deprived of her opportunity to appear and present her case. (*Gale* v. *Witt, supra,* 31 Cal.2d 362.)

Where there is extrinsic fraud in procuring distribution of property, equity, while it will not normally annul the decree, because of the exclusive nature of probate jurisdiction, will hold the distributee to be a constructive trustee

for those who have been prevented, by the fraud, from appearing or from presenting their case. (*Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201 [92 P. 184] ; *Estate of Cecala,* 104 Cal.App.2d 526 [232 P.2d 48] ; *Ferguson* v. *Ferguson, supra,* 58 Cal.App.2d 811; *Purinton* v. *Dyson,* 8 Cal.2d 322, 327 [65 P.2d 777, 113 A.L.R. 1230] ; *Estate of Ross,* 180 Cal. 651 [182 P. 752] ; *Security-First Nat. Bank* v. *Superior Court, supra,* 1 Cal.2d 749; *Sohler* v. *Sohler,* 135 Cal. 323 [67 P. 282, 87 Am.St.Rep. 98] ; *Thayer* v. *Fish,* 49 Cal.App.2d 618 [122 P.2d 358].)

The authorities heretofore cited, some of which deal solely with the jurisdiction of the probate court, or involve collateral attacks upon its decrees, and some of which involve attempts to show extrinsic fraud or mistake as a basis for a direct attack in equity, are pertinent here. They show the peculiar nature of probate decrees, which are in rem, and do not depend for their validity upon the kind of notice required to bring one before the court in an action in personam, or even upon the kind of notice required by due process in other in rem proceedings, in which one may be deprived of vested rights. In actions in personam, a mere allegation of lack of personal service of process, or of other notices required in the subsequent course of the proceedings, may be sufficient to establish extrinsic fraud or mistake. In other in rem proceedings, the notice given, while in literal compliance with law, may be so clearly insufficient that extrinsic fraud or mistake can be claimed. Not so in probate—something more must appear. Noncompliance with statutory requirements would be enough, but that is not alleged.

When administration of an estate is begun by the probate of a will, the published notice gives the court jurisdiction to proceed. Even failure of the executor to name those *known to it* in the petition does not deprive the court of jurisdiction. (*Murray* v. *Superior Court, supra,* 207 Cal. 381; *Estate of Twombley,* 120 Cal. 350 [52 P. 815].) The provisions in the code for notice by mail (Prob. Code, §§ 326, subd. (3), and 328) are directory only (*Nicholson* v. *Leatham,* 28 Cal.App. 597 [153 P. 965, 155 P. 98] ). *A fortiori,* failure to name an heir *not known* to the executor cannot affect the court's jurisdiction, nor, standing alone, amount to extrinsic fraud or mistake.

The law is fully complied with when the executor lists, and notice is given to, heirs *known* to it. " 'The adminis-

tration of the estate of a decedent . . . is one indivisible judicial proceeding from the order appointing the administrator to that of his final discharge. The proceeding is one purely *in rem,* and all parties in interest—heirs, devisees, legatees, distributees and creditors—are necessarily in court at all times.' '' (*Wood* v. *Roach, supra,* 125 Cal.App. 631, 635-636.)

It has been repeatedly held that one who lives in another state, or in a foreign country, and never in fact received any notice, is still bound if the statutory notice was given. (*Miller* v. *Pitman, supra,* 180 Cal. 540; *Monk* v. *Morgan,* 49 Cal.App. 154 [192 P. 1042]; *Tracy* v. *Muir, supra,* 151 Cal. 363.) This rule has been applied even against the contention that the former statutory provisions for notice discriminated against out-of-state parties. The Legislature has the power so to discriminate. (*Estate of Davis, supra,* 136 Cal. 590; *Estate of Davis, supra,* 151 Cal. 318, 326; *Tracy* v. *Muir, supra,* 151 Cal. 363.)

In the case of a petition for distribution, the heirs are not entitled to personal notice. The court acquires jurisdiction of them by the original notice of probate. (*Daly* v. *Pennie,* 86 Cal. 552 [25 P. 67, 21 Am.St.Rep. 61]; *Estate of Loring, supra,* 29 Cal.2d 423; *Miller* v. *Pitman, supra,* 180 Cal. 540; *cf. Estate of Simmons,* 168 Cal. 390 [143 P. 697]; *Thayer* v. *Fish, supra,* 49 Cal.App.2d 618.) They can protect themselves by requesting special notice. (Prob. Code, § 1202; *Federal Farm Mtg. Corp.* v. *Sandberg, supra,* 35 Cal.2d 1; *Estate of Loring, supra,* 29 Cal.2d 423, 429; *Thayer* v. *Fish, supra,* 49 Cal.App.2d 618.)

It has been held that neither an executor nor an administrator is under a duty to search out unknown heirs. (*Hewett* v. *Linstead, supra,* 49 Cal.App.2d 607, 613; *Nicholson* v. *Leatham, supra,* 28 Cal.App. 597.) In the Nicholson case, the court went so far as to say that the executrix is a trustee for the legatees only, not the heirs. We doubt the validity of this proposition, but need not decide the question here.

It follows, and it has been held, that ignorance on the part of an executor or administrator of the existence of an heir is not, legally, a "mistake." (*Hewett* v. *Linstead, supra,* 49 Cal.App.2d 607, 613.) Indeed, his only duty is to give the statutory notice even if he knows of the existence of an out-of-state heir; he need not keep such heir advised as to proceedings as to which no notice to that heir is required. (*Hewett* v. *Linstead, supra,* at p. 613.) It is true

that if the executor or administrator knows of an heir, and withholds that information from the court, his doing so is extrinsic fraud, justifying a suit in equity by that heir to impose a constructive trust. This is because the executor is a fiduciary, and silence on the part of a fiduciary, who is under a duty to speak, is fraud. (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728].) But that is not alleged here.

We hold that the executor's ignorance as to the existence of appellant is not an extrinsic mistake, and certainly not extrinsic fraud.

Nor does the mere silence of Alfred constitute either an extrinsic mistake or extrinsic fraud. An heir, devisee or legatee has been held to be under no duty to notify another heir, devisee or legatee of the death of the decedent, or of the probate proceedings. (*Beltran* v. *Hynes, supra,* 40 Cal. App. 177; *Hewett* v. *Linstead, supra,* 49 Cal.App.2d 607; *Mulcahey* v. *Dow, supra,* 131 Cal. 73; *Tracy* v. *Muir, supra,* 151 Cal. 363.) In *Tracy,* the court particularly held (p. 369) that heirs and legatees, ''occupied no position of trust or confidence which imposed upon them any special duty as to plaintiff,'' who was also an heir. Nor, having given the required statutory notice, is an heir, even one *who is also an administrator,* under duty to keep other heirs further informed. Mr. Justice Richards, speaking for this court in *Monk* v. *Morgan, supra,* 49 Cal.App. 154, 160, in a part of one of his shorter sentences, put the matter thus: ''[the defendant] either in his capacity as a coheir . . . or in his capacity as administrator thereof, owed to the plaintiffs herein no further duty in the way of informing them either of the death of Henrietta M. Cox or of the fact of his appointment to be the administrator of her estate, or of the various steps taken by him as such administrator or by the court in such administration up to and including the entry of the decree of distribution therein, other than that which would have been afforded to them, and each of them, through the giving of the notices required by law to be given during such administration, and which having been duly given constituted constructive notice to said plaintiffs as to the death of the decedent and as to all proceedings taken and had in the course of the administration of her estate.''

An allegation that one heir ''concealed'' the existence of another from the court does not charge extrinsic fraud. (*Westphal* v. *Westphal, supra,* 20 Cal.2d 393.)

Because the complaint does not allege any facts

124

placing a duty upon Alfred to speak, we cannot hold that his silence was a fraud upon appellant.

We have carefully considered all of the cases cited by appellant, as well as other cases not cited by her, in which a constructive trust was imposed upon a distributee in probate by reason of extrinsic fraud or mistake. None goes so far as we would have to go to hold for appellant here.

In one case, *Pearson* v. *Pearson, supra,* 46 Cal. 609, the notice then required by law, either by publication or personal, the two being alternative methods of obtaining jurisdiction, was not given. *Baker* v. *O'Riordan,* 65 Cal. 368 [4 P. 232], is similar. In others, the distributee took affirmative action, of a fraudulent character, to prevent the plaintiff from appearing in the probate proceedings. (*Olivas* v. *Olivas,* 61 Cal. 382; *Wingerter* v. *Wingerter,* 71 Cal. 105 [11 P. 853]; *Caldwell* v. *Taylor,* 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194]; *Walsh* v. *Majors,* 4 Cal.2d 384 [49 P.2d 598]; *Craney* v. *Low,* 46 Cal.2d 757 [298 P.2d 860]; *Monk* v. *Morgan, supra,* 49 Cal. App. 154; *Larrabee* v. *Tracy,* 39 Cal.App.2d 593 [104 P.2d 61]; *Larrabee* v. *Tracy,* 21 Cal.2d 645 [134 P.2d 265]; *Blair* v. *Mahon,* 104 Cal.App.2d 44 [230 P.2d 832].) Nothing of that sort is alleged here.

Then there is a group of cases in which the defendant procured property by means of false allegations in a petition to the court—either by directly stating falsehoods, or by failing to disclose facts which should have been stated in order to make the petition truthful, as a result of which the plaintiff was prevented from being heard. (*Wickersham* v. *Comerford,* 96 Cal. 433 [31 P. 358]; *Purinton* v. *Dyson, supra,* 8 Cal.2d 322; *Monk* v. *Morgan, supra,* 49 Cal.App. 154; *Morgan* v. *Asher,* 49 Cal.App. 172 [193 P. 288]; *Hewett* v. *Linstead, supra,* 49 Cal.App.2d 607 (dictum); *Duffy* v. *Duffy,* 82 Cal.App.2d 203 [186 P.2d 61]; *Harkins* v. *Fielder,* 150 Cal.App.2d 528 [310 P.2d 423]; *Zaremba* v. *Woods,* 17 Cal.App.2d 309 [61 P.2d 976].) There are no such allegations here.

A number of cases involve fraud by an administrator or executor, in violation of his duties as a fiduciary (*Bergin* v. *Haight,* 99 Cal. 52 [33 P. 760]; *Curtis* v. *Schell,* 129 Cal. 208 [61 P. 951, 79 Am.St.Rep. 107]; *Sohler* v. *Sohler, supra,* 135 Cal. 323; *Estate of Ross,* 140 Cal. 282 [73 P. 976]; *Simonton* v. *Los Angeles T. & S. Bank,* 192 Cal. 651 [221 P. 368]; *Purinton* v. *Dyson, supra,* 8 Cal.2d 322; *Van Strien* v. *Jones,* 46 Cal.2d 705 [299 P.2d 1] (dictum); *Monk* v. *Morgan, supra,* 49 Cal.App. 154; *Morgan* v. *Asher, supra,* 49 Cal.App. 172;

*Larrabee* v. *Tracy, supra,* 21 Cal.2d 645; *Duffy* v. *Duffy, supra,* 82 Cal.App.2d 203; *Blair* v. *Mahon, supra,* 104 Cal.App.2d 44; *Cardozo* v. *Bank of America,* 116 Cal.App.2d 833 [254 P.2d 949]), or a mistake under similar circumstances. (*Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317].) Again, there are no such allegations in this case.

In certain cases, there was a special confidential relationship between the plaintiffs and the fraudulent defendant, such as that of child and parent or ward and guardian (*Sohler* v. *Sohler, supra,* 135 Cal. 323; *Estate of Charters,* 46 Cal.2d 227 [293 P.2d 778]), or beneficiary and trustee (*Aldrich* v. *Barton,* 138 Cal. 220 [71 P. 169, 94 Am.St.Rep. 43]). But compare *Apablasa* v. *de Sepulveda,* 91 Cal.App. 232 [267 P. 105].

Still others involved failure of an executor to give notice to a *known* heir or beneficiary. (*Carney* v. *Simmonds, supra,* 49 Cal.2d 84; *Monk* v. *Morgan, supra,* 49 Cal.App. 154; *Sears* v. *Rule,* 45 Cal.App.2d 374 [114 P.2d 57]; *Sears* v. *Rule,* 27 Cal.2d 131 [163 P.2d 443].)

There is also a case in which an heir, who was asked by the attorneys for the administrator about other heirs, did not disclose their existence. Being asked, he had a duty to speak. (*Harkins* v. *Fielder, supra,* 150 Cal.App.2d 528.) That is not alleged here. In some cases the defendant fraudulently entered an unauthorized appearance in the probate proceedings for the plaintiff (*Baker* v. *O'Riordan, supra,* 65 Cal. 368; *Wingerter* v. *Wingerter, supra,* 71 Cal. 105).

One is a case of actual mistake (*Bacon* v. *Bacon, supra,* 150 Cal. 477), where the executors misread the will and thereby misinformed the plaintiff beneficiaries as to its terms.

Cases involving other types of actions in rem, where the judgment can cut off vested rights, not subject to administration and to legislative control as are appellant's rights, are not in point. Moreover, those cases only require a disclosure of *known* claimants by one who affirmatively seeks the aid of the court. (Cases under the McEnerney Act, Stats. 1906, Ex. Sess., p. 78: *Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289 [88 P. 356, 119 Am.St.Rep. 199, 8 L.R.A. N.S. 682]; *Holmes* v. *O'Brien,* 28 Cal.App. 264 [151 P. 1151]; *Boyle* v. *Boyle,* 97 Cal.App. 703 [276 P. 118]; quiet title: *Dunlap* v. *Steere,* 92 Cal. 344 [28 P. 563, 27 Am.St.Rep. 143, 16 L.R.A. 361]; *Parsons* v. *Weis,* 144 Cal. 410 [77 P. 1007]; *Doyle* v. *Hampton,* 159 Cal. 729 [116 P. 39]; *Stern* v. *Judson,* 163 Cal. 726 [127 P. 38]; *Sipe* v. *McKenna,* 88 Cal.App.2d 1001 [200

P.2d 61] ; actions to confirm an irrigation district, Stats. 1889, p. 212: *Crall* v. *Poso Irrigation District,* 87 Cal. 140 [26 P. 797] ; partition: *Wool* v. *Scott,* 140 Cal.App.2d 835 [296 P.2d 17] ; tax sales: *Martin* v. *Parsons,* 49 Cal. 94; action to determine ownership of a bank (Fin. Code, §§ 671.1-671.17) : *Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 553-559 [305 P.2d 20] ; decree as to abandonment of child: *Wells* v. *Zenz,* 83 Cal.App. 137 [256 P. 484].) Even less in point are cases involving false affidavits for publication of summons in divorce (*Williams* v. *Williams,* 57 Cal.App. 36 [206 P. 650] ; *Wendell* v. *Wendell,* 111 Cal.App.2d 899 [245 P.2d 342]). Nor are guardianship cases in point; orders settling guardian's accounts are not conclusive against the ward because of the ward's disability. (*Guardianship of Vucinich,* 3 Cal.2d 235 [44 P.2d 567].)

 Nevertheless, and in spite of the fact that appellant has twice had an opportunity to amend, we have concluded that she should be given another chance. That is because of the peculiar history of the case. When the demurrers were considered below, *Estate of Torregano, supra,* 54 Cal.2d 234, had not yet been decided by this court, much less by the Supreme Court. The court below examined the will and determined, as a matter of law, that appellant was not a pretermitted child. It was therefore unnecessary for it to consider the sufficiency of the allegations of extrinsic fraud or mistake. Under these circumstances, the deficiencies in these three causes of action may not have been carefully considered, or brought to the attention of the court or of appellant's counsel. In the interest of justice, therefore, we think that appellant should be permitted to amend.

5. *The fifth cause of action is insufficient.*

This cause of action was apparently added as a sort of backstop in the even that appellant were held not to be a pretermitted child. It contains a vast amount of evidentiary and epithetical matter. In essence, it makes two charges: (1) that some 45 years ago, and continuing ever since, Alfred and Ernest conspired to deprive appellant of her rights to inherit as Ernest's daughter, as a result of which Ernest, by will, left all of his estate to Alfred; and (2) that Alfred procured the execution of the will by exerting undue influence upon Ernest. It then alleges that the bank, the executor, was ignorant of appellant's existence, and that Alfred "intentionally and wilfully and fraudulently withheld" information about appellant from the bank.

It is at once apparent that the allegations as to lack of notice to appellant, and as to the executor's ignorance and Alfred's fraud, are the same as, and no stronger than, those in the second, third and fourth causes of action. What we have said as to them is equally applicable here.

As to the conspiracy, it adds nothing to appellant's case. Until the death of Ernest, appellant had no rights as an heir. Ernest had a perfect right, if he chose, to cut her off in his will without a cent. His conspiring with Alfred to do so can add nothing to appellant's rights. It is not unlawful to conspire to do, in a lawful manner, what one has a right to do. A conspiracy does not give rise to a cause of action unless it results in a civil wrong to the party complaining. (*Jacob* v. *Hibernia Bank,* 186 Cal.App.2d 756, 759 [9 Cal.Rptr. 901], and cases there cited; *Burke* v. *Hibernia Bank,* 186 Cal.App.2d 739, 747 [9 Cal.Rptr. 890]; *Tracy* v. *Muir, supra,* 151 Cal. 363, 369, 373.)

It is at least doubtful whether any court but the probate court itself can decide that a will was procured by undue influence. The probate of a will cannot be set aside in a suit in equity. Equity never had jurisdiction of such matters, and as to them the jurisdiction of the probate court is truly exclusive. The rule in this state is as old as the famous Broderick will case (*State of California* v. *McGlynn, supra,* 20 Cal. 233; *Case of Broderick's Will,* 21 Wall. (U.S.) 503 [22 L.Ed. 599]), involving a claim of forgery. (*Langdon* v. *Blackburn, supra,* 109 Cal. 19 (undue influence); *Nicholson* v. *Leatham, supra,* 28 Cal. 597 (undue influence); *Tracy* v. *Muir, supra,* 151 Cal. 363 (forgery); cf. *McDaniel* v. *Pattison,* 98 Cal. 86, 97 [27 P. 651, 32 P. 805]; *Estate of Walker,* 160 Cal. 547 [117 P. 510, 36 L.R.A. N.S. 89].) The only case apparently to the contrary is *Zaremba* v. *Woods, supra,* 17 Cal.App.2d 309, and there, as we have seen, there was a sufficient showing of extrinsic fraud which is not the case here.

Moreover, a pretermitted child, as such, has no standing to contest a will. (*Estate of Philippi, supra,* 71 Cal. App.2d 127; *Estate of Price,* 56 Cal.App.2d 335 [132 P.2d 485]; *Estate of Sankey,* 199 Cal. 391 [249 P. 517].) This is because such a child takes in spite of, and in opposition to, the will. That is the position asserted by appellant.

We conclude that none of the causes of action sufficiently pleads a case of extrinsic fraud or mistake.

As to the first and fifth causes of action, the judgment is affirmed. As to the second, third and fourth, the judgment is reversed, with directions to permit the plaintiff to amend if she be so advised. Plaintiff shall recover costs on appeal.

Bray, P. J., and Tobriner, J., concurred.