Filed 5/31/13  Estate of O'Neil CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of EDWARD AIDEN O'NEIL, Deceased. | |
| EDUARDO I. MEDINA, Individually and as Administrator, etc., | E056027 |
| Petitioner and Respondent, | (Super.Ct.No. PSP1100081) |
| v. | **OPINION** |
| EITHNE L. KOST et al., | |
| Objectors and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge.
Affirmed.

Law Office of Daryl L. Binkley and Daryl L. Binkley for Objectors and
Appellants.

Stephen A. Sindoni for Petitioner and Respondent.

On April 11, 2012, the court approved an order for final distribution in the Estate

of Edward Aiden O'Neil (O'Neil).  Eithne L. Kost and Hazel McGean appeal from the

1

order. The order is appealable under Probate Code section 1303[1] and Code of Civil Procedure section 904.1, subdivision (a)(10).

I

STATEMENT OF FACTS

O'Neil, a resident of Desert Hot Springs, died of natural causes on February 4, 2011. He was found by a friend and neighbor, Eduardo Medina.

On February 18, 2011, Medina, acting through his attorney, filed a petition for probate of a notarized holographic will. The handwritten will left three pieces of real property and the contents of a Charles Schwab account to Medina. The subsequent inventory and appraisal listed the value of the real property as $128,000. The Schwab account was then worth $86,511.70, for a total value of $214,511.70. The total value of all the property in the inventory and appraisal was $238,028.78.

A notice of the filing of the petition for probate was published in The Public Record, a Palm Springs newspaper, on March 1, 8, and 15, 2011.

A copy of the petition for probate was allegedly mailed to Kost, O'Neil's sister, at a post office box in Pleasant Valley, New York. Kost subsequently denied receiving notice of the probate, although the postal box address was correct. McGean, also a sister of O'Neil, did not receive any notice of the proceeding and alleged that she did not learn of the death of her brother until January 2012.

---

[1] Unless otherwise indicated, all further statutory references are to the Probate Code.

Medina alleged he sorted through decedent's papers and found Kost's name and address.[2] He did not find a reference to McGean, and she was not notified. On February 28, 2011, Medina filed a petition to administer decedent's estate. A copy was allegedly mailed to Kost at the post office box in New York.

An order for probate was filed on April 6, 2011. The court appointed Medina "administrator with will annexed." On November, 29, 2011, a petition for final distribution was filed and approved by the court. It ordered distribution of the entire net estate to Medina. Again, a copy was allegedly mailed to Kost.

Kost and McGean then sought a preliminary injunction. On February 10, 2012, a hearing was held on the request, and the injunction was denied. Notice of appeal from the order for final distribution was filed on April 3, 2012.

II

ISSUES

Kost and McGean contend they never received notice of the probate proceedings and that, as a result, the probate court did not have jurisdiction to enter the final order of distribution.

They further contend that Medina committed extrinsic fraud because he told the court that he was the sole beneficiary under the will and because the final order of distribution confirmed that he was to receive O'Neil's entire net estate rather than the property listed in the holographic will.

---

[2] The coroner's investigation report contains references to a power of attorney that O'Neil allegedly gave Medina. That document is not in our record.

III

DISCUSSION

In *Stevens v. Torregano* (1961) 192 Cal.App.2d 105, 113-115, the court said, "Ever since the Constitution of 1879 was adopted, decrees of the superior court, sitting in probate, have been held to be just as much final judgments as any other judgment of the superior court. They are entitled to the same presumptions, including the presumption that the court had jurisdiction to render them, as any other judgment. [Citations.] . . . [¶] In two respects, probate decrees are entitled, in a sense, to a greater finality than ordinary judgments in personam. First, they are and always have been, in rem, binding upon all persons interested. [Citations.] [¶] Second, constructive notice is sufficient, even though it may not in fact give actual or personal notice, in a particular case, to a particular heir, devisee, legatee or other interested person. This is because the proceeding is in rem, and also because the 'right' to take as heir or by will is really a privilege, completely within legislative control. [Citations.] [¶] . . . [¶] Thus it has been repeatedly held that: 'By giving the notice in the manner prescribed by the statute, the court acquires jurisdiction over all persons entitled to assert any claim to the estate, and, whether they appear and present their claim for adjudication, or fail to appear and suffer default, the judgment is conclusive upon them.' [Citations.]"

Probate procedure is straightforward. Section 8000 provides that probate proceedings are begun by filing of a petition for probate. Section 8002 prescribes the contents of the petition.

4

*In re Estate of Edwards* (1908) 154 Cal.91 states the general principle that the filing of the petition, with will attached, is necessary to give the court jurisdiction to determine "whether or not it be a legal expression of a testamentary intent upon the part of the deceased." (*Id*. at pp. 94-95, italics omitted.)

In *In Estate of Jenanyan* (1982) 31 Cal.3d 703, 708, the court explained: "The probate of an estate consists of a series of procedures, from the initial appointment of an executor or administrator to the final distribution of the estate. At each stage, the Probate Code specifies what notice must be given to interested parties. [Citation.] The notice requirements are jurisdictional, so failure to comply with the statutory requirements may render the resulting proceedings void. [Citations.] Thus, a claim of lack of jurisdiction is a corollary to a claim of insufficient notice. The trial court is without jurisdiction to make an order which has not been properly noticed, unless the right to notice has been waived."

After discussing cases, the court said: "These cases stand for the proposition that the contents of a probate petition must adequately inform interested parties of the issues that may be decided at a probate proceeding. Such a conclusion is consistent with the cases holding that notice of probate proceedings is a jurisdictional requirement. [Citations.]" (*In Estate of Jenanyan*, *supra*, 31 Cal.3d. at p. 710.) One of the cited cases, *Lilienkamp v. Superior Court* (1939) 14 Cal.2d 293, states: "Jurisdiction is established when the appropriate petition has been filed and the notice required by the statute has been given." (*Id*. at p. 298.)

5

Section 8003 provides that notice must be given in the manner stated in section 8100 et seq. Section 8110, subdivision (1) provides that notice must be given by mail or personal delivery on "[e]ach heir of the decedent, so far as known to or reasonably ascertainable by the petitioner."

Section 8120 requires that the notice of hearing of a petition for administration must be published. As stated above, there was publication in this case. Publication alone is not sufficient when there are known or reasonably ascertainable persons who must be notified under section 8110. (*Estate of Carter* (2003) 111 Cal.App.4th 1139 (*Carter*).) The corollary is also true: notice need not be given in cases where the identity and existence of a potential heir is unknown. (*Id.* at p. 1149.)

With regard to McGean, Medina contends that he had no knowledge of her existence, and there is no contrary evidence. With regard to Kost, Medina contends that he found her name in O'Neil's papers and that his attorney sent her the requisite notices. Kost contends she never received the letter notices.

As Medina points out, the trial court found, in its order for probate, that "[a]ll notices required by law have been given." That determination was not appealed or collaterally attacked. Subsequently, the order for final distribution found that "[a]ll notices of the hearing have been given as required by law."

We agree with Medina that the proper method to attack the probate court's determinations was by a collateral attack under Code of Civil Procedure section 473 or pursuant to "the inherent power of a court to set aside a judgment procured by the extrinsic fraud of keeping an adversary out of court." (*Carter*, *supra*, 111 Cal.App.4th at

6

p. 1154.)  Obviously, we cannot make such factual determinations on appeal from an order of final distribution.

Some of the factual issues regarding notice were apparently raised in the request for a preliminary injunction filed after the final distribution.  The request for a preliminary injunction was denied on February 10, 2012.  No issue relating to that request is presented in this appeal.

We therefore conclude that the trial court found that notice was properly given.  The notice by publication and the notice pursuant to section 8110 to known or reasonably ascertainable heirs satisfied the due process requirements of *Tulsa Professional Collection Services, Inc. v. Pope* (1988) 485 U.S. 478, as thoroughly explained in *Carter*, *supra*, 111 Cal.App.4th 1139.

The probate court's implied findings that McGean was not a reasonably ascertainable heir and that Kost was properly notified have not been successfully collaterally attacked in the probate court.  Thus, appellants have appealed from the order for final distribution but have not shown the existence of a jurisdictional defect in that order.

*Carter* affirmed the probate court's determination that a final order of distribution should be set aside.  (*Carter*, *supra*, 111 Cal.App.4th at pp. 1141-1142.)  After the final order was filed, two women came forward who were arguably heirs under the laws of intestate succession.  (*Ibid*.)  The moving papers contained evidence that decedent had received the two claimants into his home and had held them out to be his natural children.  (*Ibid*.)  The petitioner had concluded that the women did not qualify as heirs and were

7

therefore not entitled to personal notice under section 8110.  The court said:  "While the Probate Code clearly requires that heirship established on that basis be by clear and convincing evidence [citation], that determination must ultimately be made by a *court*, not a self-interested petitioner for administration who has an incentive to 'find' against a potential and *rival* claimant [citation] . . . .  Only then can a *neutral* decision-maker adjudicate the merits of their claim to heirship.  Any other rule makes the petitioner for administration a judge in his or her own cause."  (*Carter*, at p. 1142.)[3]

The same general issue is presented here.  McGean and Kost were potentially heirs by intestate succession.  They argue that they were not aware of the proceedings and did not assert their claims until after the order for final distribution.  When they did so, they asked for a preliminary injunction to prevent the transfer of assets to Medina, but, unlike the claimants in *Carter*, they did not request a set-aside order.

The same analysis applies to appellants' claim that Medina committed extrinsic fraud by stating to the court that he was entitled to the whole estate, rather than the specifically bequeathed property.  Appellants, as heirs, had a claim to the residual of the estate that they did not assert in a request for a set-aside order.  As a result, the factual issues inherent in appellants' claim were not litigated.

---

[3]    As the court said at a later point, "In such a case, some sort of adjudicatory process must be performed by someone, and by its terms the Probate Code contemplates that it will be performed, at least initially, by the petitioner for administration of the estate.  There is no other way to read Probate Code section 8110, which by its operation places the burden on the petitioner to send personal notice to 'known' and 'reasonably ascertainable' heirs."  (*Carter*, *supra*, 111 Cal.App.4th at pp. 1147-1148.)

Since there has been no successful collateral attack on the order of final distribution, it must stand.

## IV

## DISPOSITION

The probate court's order for final distribution is affirmed. Respondent shall recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RICHLI                                  
                                                    J.

We concur:


RAMIREZ                      
                     P. J.


MILLER                        
                     J.

9