Filed 7/28/15  Cheung v. Cheung-Wick CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JIMMY YIU BING CHEUNG,<br><br>    Plaintiff, Cross-defendant and<br>    Appellant,<br><br>v.<br><br>NANCY CHEUNG-WICK et al.,<br><br>    Defendants, Cross-complainants<br>    and Respondents,<br><br>STEPHEN YUNG,<br><br>    Cross-defendant and Appellant;<br><br>KWAI GUI YING CHEUNG,<br><br>    Appellant. | 2d Civil No. B254254<br>(Super. Ct. No. CV128198-Lead<br>Consolidated with LC128949)<br>(San Luis Obispo County) |

This is a dispute among family members over the home of their deceased mother.  Mother conveyed the home to her son.  Later, the son reconveyed the home to the mother.  Mother left the home to a daughter in her will.  After mother died, the son sued the daughter and another sister to rescind the deed from the son to the mother and to quiet his title to the house.  The daughter and sister

cross-complained against the son and brother-in-law for fraud and damages.  The trial court found for the daughter and sister on the complaint and for the son and brother-in-law on the cross-complaint.

The son and brother-in-law appeal.  We remand for an award of costs to the brother-in-law as the prevailing party on the cross-complaint.  In all other respects we affirm.

## FACTS

Fook Yeung Cheung (Ms. Cheung) owned a single family residence on Bella Vista Avenue in Atascadero.  Mrs. Cheung had six children:  Jimmy, Nancy, Mary, Helen, Lois and Solomon.  Jimmy is married to Kwai Gui Ying (Gui Ying) and Helen is married to Stephen.[1]

Mrs. Cheung lived in the residence with Jimmy and his wife since 2003.  Jimmy's income was insufficient to service the existing mortgage on the house.  In 2005, Jimmy, Helen, Mary and Nancy agreed to each contribute $350 per month to support Mrs. Cheung.  The money would be deposited in Mary's bank account; she would make the mortgage payments.  Jimmy and his wife would continue to live in the house and assist Mrs. Cheung in her declining years.

*2007 Will and Deed from Mrs. Cheung to Jimmy*

In June 2007, Mrs. Cheung, Jimmy, Helen and Stephen met with attorney Betty Sanders.  Stephen presented Sanders with a form will for Mrs. Cheung.  In the will, Mrs. Cheung left the house to Jimmy.  Sanders determined the form will was adequate and it was executed by Mrs. Cheung and witnessed in Sanders' office.

Mrs. Cheung also executed a deed conveying her house to Jimmy subject to a life estate in herself.

---

[1] For clarity, we refer to the parties and family members by their first names.

Sanders had known the Cheung family for many years. She testified that Mrs. Cheung was in charge of her own affairs and was competent at the time of their meeting.

*2009 Will and Power of Attorney*

In 2009, Mary and Nancy learned that Jimmy's wife, Gui Ying, was quarreling with Mrs. Cheung. Gui Ying had told Mrs. Cheung that she no longer owned the house, and if she did not behave she would be thrown out.

Mary, Nancy and Lois learned their mother had left the house to Jimmy in her will. They had not known about the 2007 deed from Mrs. Cheung to Jimmy.

Mary, Nancy and Lois arranged a consultation for their mother with attorney Patricia Scoles. Mary and another sister accompanied their mother to Scoles' office. With Mary translating, Mrs. Cheung told Scoles she wanted to leave the house to Nancy. She also wanted Nancy to have her durable power of attorney.

Scoles prepared the documents. They were executed by Mrs. Cheung and witnessed by Scoles' office staff. Scoles testified Mrs. Cheung had the capacity to make the will and power of attorney.

*Jimmy's Deed to Mrs. Cheung*

During one of Mary's and Nancy's visits, Mrs. Cheung stated she understood the sacrifices Mary and Nancy were making to support her. In Jimmy's presence, Mrs. Cheung told the women that they would be repaid when the house was sold after her death. Jimmy expressed no opposition.

In late 2009, Mary considered obtaining a reverse mortgage to support her mother. By the Spring of 2010, Mary had arranged terms for the mortgage. The documents showed Mrs. Cheung would be the borrower, the mortgage would be secured by her home and the payments would be based on her life expectancy.

In the course of arranging for the mortgage, Mary learned from a title report that Jimmy had title to the house under the 2007 deed. Mary and Nancy testified they were very angry with Jimmy. They believed there was an

3

understanding among the four siblings contributing to their mother's support, that the house would be sold after their mother died and the proceeds used to reimburse them. They believed the 2007 deed violated that agreement. Jimmy had concealed the deed from the siblings and was using their contributions to support himself and his family.

Mary explained a reverse mortgage to Jimmy. Mary testified Jimmy was pleased and excited that he would no longer be required to contribute to his mother's support. He did not seem concerned that he would be required to give up possession of the house within one year of his mother's death.

Scoles prepared a quitclaim deed transferring the property from Jimmy back to Mrs. Cheung. Scoles explained to Jimmy that if he signed the deed he would be giving ownership of the property back to his mother. Jimmy signed the quitclaim deed on June 22, 2010, and it was recorded on the same day.

*Probate*

Mrs. Cheung died on July 13, 2010. The reverse mortgage was not completed.

Nancy petitioned to probate Mrs. Cheung's will on July 13, 2010. Scoles represented Nancy. Scoles mailed notice of the petition to each heir, including Jimmy. Jimmy admitted receiving letters from an attorney, but testified that Mary told him not to open them. He said he put them in an envelope and mailed them to Mary.

Only Scoles appeared at the hearing. The probate court admitted the will to probate and issued letters of administration to Nancy. No objection was raised.

Lois testified Jimmy showed her two notices he had received. One was a notice of hearing, waiver of accounting, report of executor and petition for distribution. The other was a request to continue the hearing on final distribution. Both documents were in their original envelopes, addressed to Jimmy at the Bella Vista address and postmarked April 11 and May 2, 2011, respectively.

4

Lois said Jimmy told her he showed the notices to a friend and he knew the house was going to Nancy. Lois said Jimmy asked her to keep the notices for him because if his wife found out the house was going to Nancy, there would be a "world war."

*Findings*

In granting judgment to Nancy and Mary on Jimmy's complaint, the trial court found that the probate order distributing the property to Nancy is res judicata. The court also found that Jimmy knowingly and intentionally reconveyed the property to his mother by the 2010 deed.

As to Nancy and Mary's cross-complaint, the trial court found the evidence insufficient to carry their burden of proof. Finally, the trial court found there is no prevailing party.

DISCUSSION

I.

Jimmy contends the trial court erred in determining the order for distribution in probate is res judicata.

Probate Code[2] section 11605 provides, "When a court order made under this chapter becomes final, the order binds and is conclusive as to the rights of all interested persons.

Section 48, subdivision (a)(1) defines an "interested person" to include "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding."

Jimmy, as Mrs. Cheung's heir and child, is an interested person within the meaning of the Probate Code. Under the plain language of section 11605 the probate court's order of distribution is conclusive as to his rights.

---

[2] All statutory references are to the Probate Code unless otherwise stated.

5

In *Stevens v. Torregano* (1961) 192 Cal.App.2d 105, plaintiff, claiming to be a pretermitted heir under her father's will, brought an action to impose a constructive trust on assets the probate court ordered distributed to the named beneficiary under the will. In upholding the sustaining of a demurrer on the ground that the probate court's order was conclusive, the Court of Appeal stated: "Ever since the Constitution of 1879 was adopted, decrees of the superior court, sitting in probate, have been held to be just as much final judgments as any other judgment of the superior court." (*Id.* at p. 113.) The court noted that decrees of the probate court are in rem and are "binding upon all persons interested." (*Id.* at p. 114.) Finally, the court noted that among the probate decrees to which the rule of finality applies, are decrees of distribution. (*Id.* at p. 116.)

Jimmy distinguishes *Stevens* on the ground that it did not involve a claim that a person's individual property was improperly listed as a probate asset and distributed by the decree. He relies on *Shelton v. Vance* (1951) 106 Cal.App.2d 194, and *Romagnolo v. Romagnolo* (1964) 230 Cal.App.2d 315, for the proposition that in such cases the order of distribution is not final as to parties asserting a claim to the property.

But the law has changed since *Shelton* and *Romagnolo* were decided. Prior to 1972, the probate court had no jurisdiction to decide controversies involving title to property between the representative of the estate and a third person not in privity to the proceedings. (See 14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 354, p. 444.) Even a decedent's child or surviving spouse could be deemed a stranger to the proceedings. (*Ibid.*) Because the probate court lacked jurisdiction to decide the matter, it is understandable that an order of distribution would not be deemed final.

In 1972 an amendment to the Probate Code gives the probate court jurisdiction over such controversies. (See 14 Witkin, *supra*, § 355, p. 445.) Section 850, subdivision (a)(2)(C) allows the personal representative or any "interested person" to petition the court for an order "[w]here the decedent died in possession

6

of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another."

Jimmy had the opportunity to litigate title to his mother's house in the probate proceedings. He chose not to. The order of the probate court is conclusive on all persons entitled to present a claim, whether they appear and assert their claim, or fail to appear and suffer default. (*Stevens v. Torregano*, *supra*, 192 Cal.App.2d at p. 115.) As an interested person, the order of distribution is a final determination of Jimmy's rights. (§ 11605.)

Jimmy cites Witkin for the proposition that a probate decree is not conclusive as to the rights of "third persons "whose claims are antagonistic to the decedent and the estate. (14 Witkin, *supra*, § 726, p. 814.) We have no quarrel with the proposition as long as "third persons" is understood to exclude "interested persons."

Jimmy argues the order of distribution is not res judicata because he did not have notice of the probate.

But the trial court found Jimmy had notice, and Jimmy admitted he received notice. The trial court was not required to believe Jimmy's testimony that Mary told him not to open the envelopes containing the notice. In addition, Lois testified Jimmy gave her two probate notices he received. He discussed the notices with a friend and knew the house was going to Nancy. He asked Lois to keep the notices for him because he was afraid of what would happen if his wife found out. That Helen may not have received proper notice is irrelevant.

Finally, Jimmy apparently is challenging the authenticity of Mrs. Cheung's signature on the estate planning documents. But the authenticity of the will is one of the matters finally decided in the probate proceedings.

## II.

Even if Jimmy were not bound by the probate order of distribution, he would not prevail.

*(a)  Burden of Proof*

Evidence Code section 662 states:  "The owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof."  The purpose of the section is to promote the stability of title to real property.  (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 294.)

Jimmy argues that the existence of a confidential relationship between the parties shifts the burden of proof.  But there is no confidential relationship exception to Evidence Code section 662.  (*Toney v. Nolder* (1985) 173 Cal.App.3d 791, 795.)  Once the confidential relationship is shown, the plaintiff still has the burden to prove that the deed is not what it purports on its face to be.  (*Ibid.*, citing *Taylor v. Bunnell* (1931) 211 Cal. 601, 606.)

Jimmy's reliance on *O'Neil v. Spillane* (1975) 45 Cal.App.3d 147, is misplaced.  There, plaintiff sued to set aside a deed creating a joint tenancy interest in defendants in her home.  The court stated that confidential relationship between the parties creates a presumption that the advantage obtained by the grantee was the result of undue influence exerted on the grantor.  (*Id.* at pp. 153-154.)  But the court in *O'Neil* did not consider the form of the title presumption found in Evidence Code section 662.  Evidence of a confidential relationship is relevant to showing the deed was the product of undue influence.  To say, however, that the existence of a confidential relationship is alone sufficient to shift the burden of proof, flies in the face of the plain language of Evidence Code section 662.

*(b)  View of the Evidence*

Jimmy's appeal is based on a view of the evidence most favorable to himself.  But that is not how we view the evidence.

In viewing the evidence, we look only to the evidence supporting the prevailing party.  (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.)  We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact.  (*Ibid.*) Where the trial court or

8

jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App. 3d 1012, 1028.)

*(c) Statement of Decision*

Jimmy argues that the court erred in not making required findings and there was no substantial evidence to support several of its findings.

A statement of decision is required to contain only the ultimate facts on which the judgment rests. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125.) Here the ultimate fact is that Jimmy intended to irrevocably pass title by his deed. (See 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 291, p. 347.) The trial court undeniably so found. The finding requires no supporting evidence; it is presumed. (Evid. Code, § 662.) Even in the absence of a statutory presumption, Jimmy as plaintiff would have the burden of proof. He simply failed to carry that burden.

III.

Stephen contends the trial court erred in not naming him as a prevailing party.

The trial court found there was no prevailing party on the consolidated actions on the complaint and cross-complaint. Thus the court awarded no costs. Stephen points out that the trial court gave him judgment as a defendant on the cross-complaint. The cross-complaint is the only action to which he is a party. Thus Stephen properly concludes he is unequivocally a prevailing party.

Nancy and Mary concede Stephen should be awarded his filing fee. They argue, however, that he should be denied any further costs. Their argument is based on the theory that Stephen's costs are duplicative of those incurred by Jimmy, and that equitable considerations justify denying Stephen costs. The equitable considerations are based on the trial court's finding that Jimmy concealed the 2010

9

deed and probate proceedings from Stephen because he knew Stephen opposed Nancy getting the house. From this finding Nancy and Mary draw the conclusion that Stephen is the real reason the parties engaged in the instant litigation.

Nancy and Mary cite no authority giving the trial court the discretion to deny costs based on such considerations. Code of Civil Procedure section 1032, subdivision (b) provides, "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Stephen is unequivocally a prevailing party. He is entitled to costs as a matter of right.

We remand for an award of costs to Stephen. In all other respects, we affirm. Costs on appeal are awarded to Nancy and Mary against Jimmy. Costs on appeal are awarded to Stephen against Nancy and Mary.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.


10

Jac A. Crawford, Judge

Superior Court County of San Luis Obispo
_____

Christian E. Iversen for Plaintiff, Cross-defendant and Appellant Jimmy Yiu Bing Cheung, Cross-defendant Stephen Yung and Appellant Kwai Gui Ying Cheung.

Thomas D. Waylett for Defendants, Cross-complainants and Respondents Nancy Cheung-Wick and Mary Sticklinski.